**CITY OF HUBER HEIGHTS, Appellee and Cross–Appellant,**

v.

**FRATERNAL ORDER OF POLICE, Appellant and Cross–Appellee.**

[Cite as *Huber Hts. v. Fraternal Order of Police* (1991), 73 Ohio App.3d 68.]

Court of Appeals of Ohio,
Montgomery County.

Decided April 10, 1991.

*Brett L. Thurman,* for appellee and cross-appellant.

*Paul L. Cox,* for appellant and cross-appellee.

WOLFF, Judge.

This matter is before us on the appeal of the Fraternal Order of Police ("FOP") and the cross-appeal of the city of Huber Heights ("city"). Both appeals are taken from a judgment which partially vacated and partially confirmed an arbitration award granted in a grievance dispute.

This controversy arose from a grievance dispute between Paul Wright, a police officer with the city, and the city. At the time the grievance arose, a collective bargaining agreement was in effect between the two parties.

Officer Wright was disciplined by his superior officer, Lt. Menard, for insubordination. Because of Wright's past history of disciplinary problems, Lt. Menard recommended that Wright be suspended for five days. Wright served the suspension on January 17, 18, 19, 23 and 24, 1989. On January 20, 1989, Officer Wright filed a grievance protesting the suspension, citing violations by the city of Articles V and VI of the collective bargaining agreement.

Section 2, Article V set forth a three-step grievance procedure, culminating in binding arbitration, whereby dissatisfied employees could prosecute grievances against the city. Step one stated that the grievant was to submit a written grievance to the police chief within five days of the incident giving rise to the grievance. The chief was to give a written response within five days of receipt of the grievance. Step two stated that the grievant could lodge a written appeal with the city manager challenging the outcome of step one. The city manager was to schedule a meeting with the police chief and the grievant within ten days. Barring a satisfactory resolution pursuant to step two, step three authorized the grievant to submit the matter to binding arbitration.

Section 3, Article V authorized the grievant to process the grievance to the next step if the city failed to respond to the grievance within the time limits prescribed under each step of the procedure. Section 5, Article V, the elections of remedies clause, mandated that the *sole* remedy for an alleged breach of the agreement was to pursue satisfaction through the three-step grievance procedure. If the grievant pursued a remedy independent of the grievance procedure, the grievance against the city was deemed waived.

Article VI set forth the city's discipline and discharge procedure. This article explicitly stated that after the employee's probationary procedure was completed, an employee could be disciplined, discharged, demoted or suspended only upon a finding of just cause.

In this case, Officer Wright grieved his suspension in accordance with step one of the Article V grievance procedure. Pursuant to the procedure, Wright met with his superior, Lt. Menard, and requested that the disciplinary infraction be removed from his record and that he be paid for the five days he had been suspended. The request was denied. Wright then met with Police Chief Jerry Baker, who responded in writing that the grievance was moot because it was not properly signed by an FOP representative as required by Section 2,

Article V. Wright appealed to City Manager Marc Thompson to hold a grievance hearing pursuant to step two of the grievance procedure.

Before Thompson responded, Wright filed an action with the Ohio Civil Rights Commission ("OCRC") alleging he had been harassed by city representatives because of his race. In Thompson's subsequent response to Wright, Thompson informed Wright that, pursuant to Section 5, Article V, the grievance procedure had been terminated because the claim filed with the OCRC constituted the pursuit of legal remedies outside those which were permissible under Article V of the collective bargaining agreement.

Wright appealed to arbitration after Thompson's failure to hold a step two grievance hearing. For purposes of arbitration, Wright was represented by the FOP pursuant to the collective bargaining agreement. The issues were, as framed by the arbitrator, whether the grievance was arbitrable under Article V, whether there was just cause for the suspension under Article VI and, if not, what the proper remedy for the unauthorized suspension would be.

The arbitrator issued two rulings: that the city had violated the terms of Article V of the collective bargaining agreement by its failure to comply with the terms of the grievance procedure and, thus, the grievant was entitled to monetary relief; and that the city had just cause, pursuant to Article VI of the agreement, to suspend the grievant for five days. The arbitrator determined that Wright had been insubordinate, which, pursuant to Article VI, provided justification for suspension. However, the arbitrator ordered the city to pay Wright monetary damages equal to his salary for the five days he was suspended. The arbitrator explained that although Wright had been guilty of misconduct, the city's failure to hold a step two grievance hearing violated Section 2, Article V of the agreement, and thus it was necessary for the award to reflect the city's misconduct. According to the arbitrator, the city's violation justified the imposition of a penalty. The record of the incident remained part of Wright's personnel file to reflect his misconduct.

The city filed a motion with the court of common pleas to vacate or modify the arbitration award pursuant to R.C. 2711.10 *et seq.* In its motion, the city claimed that the arbitrator had exceeded his jurisdiction when he ruled that the city had violated step two of the grievance procedure, entitling the city to redress under R.C. 2711.11. According to the city, the arbitrator only had the jurisdiction to consider whether Wright's suspension was one for just cause pursuant to Article VI of the collective bargaining agreement. The city argued that the Article VI issue was the only matter the parties had submitted to arbitration.

The FOP counterclaimed with an application to the trial court for an order confirming the arbitrator's award pursuant to R.C. 2711.09, and moved the court to deny the city's motion to vacate/modify.

The trial court opined that the Article V procedural issue, *i.e.*, whether the city had violated the grievance procedure by its failure to hold a step two hearing, was properly before the arbitrator, and thus the arbitrator had the authority to determine whether the city had breached its obligations under Article V. This conclusion was based on the premise that the parties had notice that the arbitrator would consider the question of the city's alleged violation of the grievance procedure. The trial court did, however, ultimately hold that the arbitrator had exceeded his authority by awarding monetary relief equal to five days' pay, since there was no rational nexus between the relief afforded and the relief permitted under the terms of the collective bargaining agreement. The trial court found that the award did not "draw its essence" from the agreement, and was instead imposed as a punitive sanction to penalize the city for its failure to follow step two of the grievance procedure. The trial court therefore vacated that portion of the award which granted Wright damages in the amount of five days' salary and confirmed the remainder of the award, including the provision relating to the arbitrator's jurisdiction to decide the grievance procedure issue.

The FOP appeals that portion of trial court's judgment which vacated the arbitrator's monetary award pursuant to R.C. 2711.10. The city cross-appeals that portion of the trial court's judgment which determined that the arbitrator did not exceed his jurisdiction pursuant to R.C. 2711.11 in deciding the Article V procedural issue.

The FOP raises the following assignment of error:

"The Montgomery County Common Pleas Court erred to the prejudice of the appellant by vacating and not confirming the award of the arbitrator in the instant case."

In order to facilitate and encourage the private settlement of grievance disputes, the scope of judicial review of arbitration proceedings is limited. *Goodyear Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 520, 71 O.O.2d 509, 511, 330 N.E.2d 703, 706. Traditionally, in order to advance the policy concerns which underlie the arbitration system, courts have refused to review the merits of an arbitration award arising from collective bargaining agreements. The interplay between the roles of the reviewing court and the arbitrator has been explained as follows:

" * * * [T]he courts have almost uniformly refused to vacate an arbitrator's award because of an error of law or fact. It has been held that the arbitrator is the final judge of both law and facts, and that an award will not be set aside

except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable." *Id.*, 42 Ohio St.2d at 522, 71 O.O.2d at 512, 330 N.E.2d at 708.

R.C. 2711.10 sets forth the limited circumstances under which a court reviewing an arbitration award is empowered to vacate an arbitration award. It provides in pertinent part that:

" * * * [T]he court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

" * * *

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In the FOP's appeal, we must determine whether the trial court exercised the proper degree of judicial restraint in its review of the arbitrator's award, and thus properly vacated the monetary award within the constraints imposed by R.C. 2711.10(D).

We begin our analysis by indulging in the presumption which favors the regularity and integrity of the arbitrator's acts in order to give effect to arbitration proceedings. *Findlay Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 131, 551 N.E.2d 186, 188. *Findlay* enunciated the applicable standard of review under R.C. 2711.10(D) as follows:

"Therefore, given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. 2711.10(D), is limited. *Once it is determined that the arbitrator's award draws its essence* from the collective bargaining agreement and is not unlawful, arbitrary or capricious, *a reviewing court's inquiry* for purposes of vacating an arbitrator's award *pursuant* to R.C. 2711.10(D) is at *an end.*" (Emphasis added.) *Id.*, 49 Ohio St.3d at 132–133, 551 N.E.2d at 189–190.

An arbitrator's award "draws its essence" from the collective bargaining agreement "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." *Id.* Therefore, an arbitrator's award may be vacated under R.C. 2711.10(D) by the reviewing court only when the award does not rationally flow from terms of the collective bargaining agreement. *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 84, 22 OBR 95, 98, 488 N.E.2d 872, 875.

In this case, the trial court vacated that portion of the arbitration award which essentially reimbursed Wright for the five days of his suspension. The

trial court determined that the connection between the relief granted, *i.e.*, the monetary award, and the remedy authorized under the terms of the collective bargaining agreement was too tenuous to satisfy *Findlay* and thus the award was unauthorized under R.C. 2710.11(D).

The FOP challenges the judgment, citing *Findlay* as authority that the trial court's review of the arbitration should have ended once it determined that the arbitrator had not exceeded the scope of his authority. We are unpersuaded by this argument.

It is true that for purposes of R.C. 2711.10(D), judicial review of an arbitration award ends upon the determination that the arbitrator did not exceed his authority.

There are two areas of judicial review implicated herein: that imposed by R.C. 2711.10(D), which, pursuant to *Findlay*, permits a court to vacate an arbitration award which does not "draw its essence" from the terms of the collective bargaining agreement; and that imposed by R.C. 2711.11(B), which permits a court to modify an arbitrator's award when the arbitrator exceeds his jurisdiction by ruling on issues not submitted for arbitration by the parties. These provisions clearly pose discrete areas of review which are readily distinguishable.

Although the trial court did not distinguish between these two provisions, we think that this distinction is implicit in the court's holding. We so conclude because the court held that the arbitrator had the jurisdiction to render a decision as to whether the grievance procedure had been violated. This holding clearly implicates review under R.C. 2711.11(B). The court next made a separate determination that the arbitrator's award did not draw its essence from the collective bargaining agreement for lack of a rational nexus between the award and the agreement. This language clearly implicates review under R.C. 2711.10(D).

In our estimation, when the court held that the arbitrator had not exceeded his authority, it was tacitly holding that modification of the award was unwarranted under R.C. 2711.11(B) because the arbitrator had the jurisdiction to rule on both the alleged Article V and alleged Article VI violations. The holding that the arbitrator had not exceeded his authority concerned whether the Article V issue had been submitted to him for decision, not whether the award drew its essence from the agreement. There is thus no inconsistency between the court's holding that the arbitrator had not exceeded his authority and its determination that the award had not drawn its essence from the agreement.

■ When we apply *Findlay* to the facts of this case, we concur with the court's holding that the arbitrator exceeded his authority by awarding Officer Wright monetary damages equal to five days' pay. We so conclude on the basis of Section 5, Article V, which stated that:

"The sole remedy to any employee for any alleged violation of this agreement or any alleged violation of his rights hereunder will be pursuant to the grievance procedure. If the grievant elects to pursue any other legal or statutory remedy, it will be at his personal expense and will terminate the grievance procedure at the City's last response."

This section, together with Section 3, provides that the exclusive remedy available to a grievant for the city's alleged violations of the terms of the collective bargaining agreement was to process the grievance to the next step. Here the city allegedly failed to follow step two of the procedure. Therefore, Wright's exclusive relief under the collective bargaining agreement was to proceed through the FOP to the step three arbitration proceeding. The FOP obviously brought the matter to arbitration, and by so doing, received all the relief to which it was entitled under the terms of the agreement. In view of the clear language of Sections 3 and 5, Article V, the award of monetary damages was an impermissible deviation from the exclusive remedy afforded by those sections. The arbitrator's award did not draw its "essence" from the agreement, and thus the award was properly vacated pursuant to R.C. 2711.10(D).

We overrule the FOP's single assignment of error.

The city has cross-appealed and advances the following assignment of error:

"The Montgomery County Common Pleas Court, while eventually and correctly ruling that an arbitration award remedy impermissibly deviated from the exclusive remedy specified in the relevant labor contract, first erred to the prejudice of appellee/cross-appellant by ruling that the arbitrator had been granted authority by the parties to rule upon the issue at all."

The critical issue presented in this assignment is whether the arbitrator had the jurisdiction to consider the city's alleged violation of the Article V grievance procedure. The city argues that the arbitrator was only authorized to decide whether Officer Wright had been properly suspended for just cause in accordance with the provisions of Article VI because the Article VI issue was the only matter submitted to arbitration by the parties. Thus, the city argues, the arbitrator exceeded his jurisdiction by ruling on the alleged Article V violation.

R.C. 2711.11, which governs modifications of arbitration awards, states in relevant part that:

" * * * [T]he court of common pleas * * * shall make an order modifying or correcting the [arbitration] award upon the application of any party to the arbitration if:

" * * *

"(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted."

In this case, the trial court found that the arbitrator had the jurisdiction to rule on the issue of the city's alleged violation of the Article V grievance procedure because the parties were on notice that the arbitrator intended to consider the issue. The trial court based this conclusion on a statement made by the arbitrator. In its decision and order, the trial court quoted the arbitrator as follows:

"Before the conclusion of arbitration the arbitrator addressed the issue of procedural error when he stated that 'of course, both sides, I assume, will be addressing the arbitrability issue, and within the just cause standard, *there will be issues raised by the union in terms of procedures that were followed* and whether that constitutes violation of a just cause standard.' (Emphasis in original.) *See* Transcript of arbitration hearing, pg. 185."

■ An arbitrator does not necessarily have carte blanche to rule on issues which, in his opinion, are ripe for decision. An arbitrator's authority " * * * is limited to that granted him by the contracting parties, and does not extend to the determination of the wisdom or legality of the bargain. ' * * * [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. * * * ' " *Goodyear, supra,* 42 Ohio St.2d at 519, 71 O.O.2d at 511, 330 N.E.2d at 706.

■ Although we do not have a transcript of the arbitration proceeding before us, both parties have cited the following excerpt from the transcript in support of their positions:

"MR. THURMAN [Counsel for city]: Mr. Nelson [arbitrator], before we conclude correspondence between counsel, I think, may be relevant as to the scope of the arbitration today. And I had two letters previously submitted to Ms. Cremeans that I would like to have copied and submitted.

"I think I marked them. I think I can mark this K and L. We think we're being ambushed if your decision would cover anything other than the just cause question and arbitrarily relating to just cause.

"* * *

"MS. CREMEANS [Counsel for FOP]: Well, when we talked on the phone and I got this letter, I was under the understanding we agreed that this arbitration would be limited to the first grievance and any question that would be relevant to the first grievance. You know, I said the following grievances which there are two on procedure and the one on the transfer would not be brought up here, and we feel that we have limited our testimony today to the one—to the one grievance.

"* * *

"MR. THURMAN: While we're on the record, could we just have an agreement on the issues the FOP plans to brief? * * *

"MS. CREMEANS: Article 6 entitled discipline and discharge sections 1, 2, and 3, contract sections violated. That's it.

"ARBITRATOR: And then, of course, both sides, I assume, will be addressing the arbitrability issue, and within the just cause standard, there will be issues raised by the union in terms of procedures that were followed and whether that constitutes violation of a just cause standard.

"MR. THURMAN: Just want to make sure we were on the record where she indicated the sections at issue.

"ARBITRATOR: The parties have agreed that the sections of the contract at issue is [sic] Article 6 Sections 1, 2, and 3."

When we read the passage cited by the trial court in the context in which it appeared in the limited portion of the transcript submitted to us, it is apparent that both parties expressly limited the issues before the arbitrator to the "just cause" considerations of Article VI. The arbitrator's final statement on the matter reflects that he was cognizant of the discrete issue, *i.e.*, the Article VI just cause issue, with which he was presented. In light of this passage, the trial court erred in concluding that the arbitrator had the jurisdiction to consider the Article V, *i.e.*, grievance procedure, issue.

 The trial court also erred by adopting a "notice" approach when it determined that the arbitrator's jurisdiction extended to the Article V procedural issue. R.C. Chapter 2711, as well as pertinent case law, confines the parameters of what the arbitrator may consider to those issues actually submitted by the parties. The statute does not permit an arbitrator to decide all issues which he considers to be before him even if he notifies the parties

that he intends to consider such matters. If an arbitrator were allowed to rule on issues on this basis an unjust result could be reached. Parties to a collective bargaining agreement bargain for the specific manner of dispute resolution. As part of the bargain, the parties decide which issues they will submit to arbitration. If the arbitrator were allowed to adopt a notice approach to jurisdiction, the parties would have no control over what matters the arbitrator could decide and their bargain would thus be frustrated.

Without more, mere "notice" that the arbitrator intended to consider the Article V issue would not have given the arbitrator jurisdiction which he otherwise did not have.

Moreover, we are not convinced that the parties were even on notice that the arbitrator would rule on the Article V issue. He stated that he assumed procedural issues would be raised within the just cause standard. Clearly, this language implicated procedural problems vis à vis Article VI. The fact that the arbitrator assumed that procedural issues would be raised did not perforce implicate Article V. It only meant that there were issues as to whether the city had properly followed the *disciplinary* procedures set forth in Article VI.

Based on the foregoing analysis, we find that the trial court erroneously concluded that the arbitrator had the jurisdiction to consider whether the city had violated the Article V grievance procedure by its alleged failure to hold a meeting between the city manager and the grievant.

We sustain the city's cross-assignment of error. We will affirm the judgment of the trial court.

*Judgment affirmed.*

FAIN, P.J., and WILSON, J., concur.