**CITY OF PORTSMOUTH, Appellant,**

**v.**

**OHIO COUNCIL 8, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, et al., Appellees.**

[Cite as *Portsmouth v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp.* (2001), 141 Ohio App.3d 423.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 99CA2674.

Decided March 6, 2001.

*J. Rick Brown* and *David Kuhn,* City Solicitor, for appellant.

*Kimm A. Massengill,* Associate General Counsel, Ohio Council 8, AFSCME, AFL–CIO, for appellees.

EVANS, Judge.

This is an appeal from the judgment of the Scioto County Court of Common Pleas, confirming an arbitration award. The arbitrator found that plaintiff-appellant city of Portsmouth ("the city") is obligated to pay certain benefits for the 1994 through 1996 contract years. The city argues that the award should be vacated because the arbitrator exceeded his authority by failing to adhere to the

terms of the 1994 collective bargaining agreement ("CBA"). We affirm the judgment of the trial court.

## STATEMENT OF THE CASE

Defendant-appellee Ohio Council 8 of the American Federation of State, County, and Municipal Employees Union ("AFSCME") and its Portsmouth Chapter, Local 1039, are the exclusive bargaining representatives for a large variety of city employees. Ohio Council 8 and defendant-appellee Local 1039–A are the exclusive bargaining representatives for a smaller group of city employees composed of police and fire dispatchers. Local 1039–A is a subsidiary of Local 1039.

In 1991, the city negotiated separate CBAs with Local 1039 and Local 1039–A for contract years 1991 through 1993. Both CBAs included "wage reopeners," which provided for a limited reopening of the agreement to renegotiate wages in contract years 1992 and 1993. In 1992, the city negotiated wage-reopener agreements with both Local 1039 and Local 1039–A, providing for a wage increase for covered employees for the 1992 contract year. In lieu of a wage increase for the 1993 contract year, the city agreed to a four-percent "pick-up" of covered employees' Public Employees Retirement System ("PERS") payments, effective May 1, 1993.[1] The 1992 wage-reopener agreement did not include a termination date.

In August 1992, the Portsmouth City Council passed two ordinances ratifying the wage-reopener agreements for employees of both Local 1039 and Local 1039–A. In December 1992, the council passed a resolution specifically authorizing the PERS pick-up portion of the 1992 wage-reopener agreement with Local 1039. However, the council did not pass a companion resolution concerning the PERS pick-up for Local 1039–A employees. As a result, the city never began paying the PERS pick-up for Local 1039–A employees.

In 1994, the city negotiated CBAs with both Local 1039 and Local 1039–A for the 1994 through 1996 contract years. Neither CBA contained a provision for the PERS pick-up. Nevertheless, the city continued to pay the PERS pick-up for Local 1039 employees.

---

1. PERS (Public Employees Retirement System) is a retirement system for state and local government employees. Public employees are required to participate in the program by contributing a percentage of their wages into PERS (currently eight and one-half percent). See, generally, R.C. Chapter 145. Under the PERS pick-up portion of the wage-reopener agreement, the city agreed to contribute four percent of the covered employees' wages to PERS, offsetting a portion of the contribution normally assessed to the employees.

In 1997, the city again negotiated new CBAs with Local 1039 and Local 1039–A. During these negotiations, the representatives of the police and fire dispatchers discovered that, while the members of Local 1039 had been receiving the benefit of the PERS pickup since 1993, the city had never made the corresponding PERS contributions for the members of Local 1039–A.

AFSCME and Local 1039–A filed a grievance with the city on behalf of the dispatchers regarding the city's failure to pay the agreed PERS pick-up for these employees. The city denied the grievance, arguing that the Portsmouth City Council failed to ratify the portion of the 1992 wage reopener that provided for the PERS pick-up for Local 1039–A. Therefore, the city claimed that it had no obligation to pay this benefit for the 1993 contract year for the dispatchers in Local 1039–A. The city further argued that the 1994 CBA superseded the 1992 wage-reopener agreement for contract years 1994 through 1996. Since the 1994 CBA with Local 1039–A contained no provision for the PERS pick-up, the city argued that it was not required to pay this benefit after the effective date of the 1994 CBA.

After the city denied appellees' grievance, appellees requested binding arbitration of the matter in accordance with the terms of the CBA. The arbitrator heard this matter in January 1998. The two issues presented to the arbitrator were whether the grievance was timely and whether the city's refusal to pay the PERS pick-up violated the 1992 wage-reopener agreement and the 1994 CBA.

The arbitrator issued his decision and award on May 20, 1998. The arbitrator found that the grievance was timely filed because appellees filed their grievance shortly after Local 1039–A discovered that the city was not paying the PERS pick-up. The arbitrator further found that the city's failure to pay this benefit was not readily apparent from the payroll information that the city supplied to Local 1039–A members. The arbitrator also found that the city was obligated to pay the PERS pick-up from May 1, 1993 (the effective date of the pick-up clause in the 1992 wage-reopener agreement), until May 1, 1997 (the effective date of the 1997 CBA).

On August 17, 1998, the city filed an application to vacate, correct, or modify this arbitration award in the Scioto County Court of Common Pleas, pursuant to R.C. 2711.10 and 2711.11. The appellees countered with their own application to confirm the award of the arbitrator, pursuant to R.C. 2711.09. The appellees also moved to dismiss the city's application and for summary judgment in their favor. On October 1, 1999, the trial court granted appellees' motion for summary judgment, dismissing the application filed by the city and confirming the award of the arbitrator.

The city filed a timely appeal of this decision, setting forth a single assignment of error for our review:

"The trial court erred in not granting the appellant's application to vacate, correct and modify the arbitrator's award when the trial court failed to find that the arbitrator exceeded his power and authority under the collective bargaining agreement by ignoring the plain meaning of the agreement."

## I

On an appeal from the granting of summary judgment, our review is *de novo*. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245. We apply the same standard on appeal as is articulated in Civ.R. 56 to determine whether summary judgment was appropriate. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315. Under Civ.R. 56, summary judgment is appropriate only where the movant demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

The parties do not dispute the facts of the case *sub judice*. Rather, their arguments address the application of the law to those facts. Each side contends that it should be entitled to judgment as a matter of law.

It is the policy of Ohio law "to favor and encourage arbitration." *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 84, 22 OBR 95, 98, 488 N.E.2d 872, 875. "[Arbitration] provides the parties with a relatively speedy and inexpensive method of conflict resolution and has the additional effect of unburdening crowded court dockets." *Id.* at 83, 22 OBR at 98, 488 N.E.2d at 875.

After an award is made in an arbitration proceeding, either party may file a motion for an order vacating, modifying, or correcting that award. See R.C. 2711.13. However, a common pleas court's review of an arbitration decision is quite narrow. See *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 520, 71 O.O.2d 509, 511, 330 N.E.2d 703, 706. "Traditionally, in order to advance the policy concerns which underlie the arbitration system, courts have refused to review the merits of an arbitration award arising from collective bargaining agreements." *Huber Hts. v. Fraternal Order of Police* (1991), 73 Ohio App.3d 68, 73, 596 N.E.2d 571, 574.

"The limited scope of judicial review [derives] from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to [arbitration] for final decision have chosen to bypass the normal litigation process." *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 52, 647 N.E.2d 844, 848. When parties agree to an arbitrator,

they also agree to accept the arbitrator's award, even if it results in a legally or factually inaccurate decision. See *id.* and *Geist v. Ohio Dept. of Commerce* (1992), 78 Ohio App.3d 404, 408, 604 N.E.2d 1372, 1375; *Endicott v. Johrendt* (Apr. 30, 1998), Franklin App. No. 97APE08–1122, unreported, 1998 WL 212770. Thus, courts will vacate or modify an arbitration award only in the limited circumstances outlined in R.C. 2711.10 and 2711.11.

In the trial court, the city argued that the court should have vacated the arbitrator's award on the grounds that the arbitrator's ruling exceeded his authority. See R.C. 2711.10(D). The city also argued that the trial court should have modified the arbitrator's award on the grounds that the arbitrator ruled on a matter not submitted to him. See R.C. 2711.11(B).

R.C. 2711.10 provides:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

" * * *

"(D) The arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

■ While R.C. 2711.10(D) provides that the arbitrator's award may be vacated where the arbitrator exceeds his or her powers, " 'the converse is also true—if the arbitrator has *not* exceeded his or her powers, the award should not be vacated or modified, absent any of the other circumstances in R.C. 2711.10 and 2711.11 (such as corruption, fraud, misconduct, partiality, or material mistake).' " (Emphasis *sic.*) *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 273, 690 N.E.2d 1262, 1265.

R.C. 2711.11 provides:

"In any of the following cases, the court of common pleas in the county wherein an award was made in an arbitration proceeding shall make an order modifying or correcting the award upon the application of any party to the arbitration if:

" * * *

"(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

" * * *

"The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

■ When determining whether the arbitrator exceeded his powers, the reviewing court must determine whether the arbitrator's award " 'draws its essence from the collective bargaining agreement.' " *Queen City Lodge No. 69 v. Cincinnati* (1992), 63 Ohio St.3d 403, 406, 588 N.E.2d 802, 805, quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428. "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus.

## II

■ There are two distinct periods of time at issue in the case *sub judice:* (1) the 1993 contract year, to which the 1992 wage-reopener agreement explicitly applied; and (2) the 1994 through 1996 contract years, subsequent to the 1994 CBA taking effect. The city's brief is ambiguous regarding whether the city continues to challenge its obligation to pay the PERS pick-up for the 1993 contract year. While the city does not expressly concede that it is obligated to pay the PERS pick-up for the 1993 contract year, its argument centers almost exclusively on the 1994 CBA, which, of course, did not apply in 1993. In the interest of thoroughness, we shall address the city's arguments as they relate to the 1993 contract year.

The city does not dispute that the 1992 wage-reopener agreement provided for a four-percent PERS pick-up effective May 1, 1993. However, the city argues in its statement of facts that Ordinance No. 92–85, enacted by the Portsmouth City Council on August 10, 1992, adopted only the wage increases agreed upon in that 1992 wage-reopener agreement and not the PERS pick-up for the 1993 contract year. In arbitration, the city insisted that federal tax law required the city to adopt specific language in its ratification of the agreement for the PERS pick-up to be effective. The city noted that Portsmouth City Council Resolution No. 10, adopted December 28, 1992, included this specific tax-law language to allow the PERS pick-up for Local 1039 to take effect. The city argued that it was under no obligation to pick up this portion of the dispatcher's PERS payments for the 1993 contract year because the council failed to enact a companion ordinance containing the required tax language for Local 1039–A.

The arbitrator disagreed. From his reading of the language of Ordinance No. 92–85, the arbitrator concluded that the Portsmouth City Council had ratified both the wage increases and the PERS pick-up agreed upon in the 1992 wage-reopener agreement for Local 1039–A. Therefore, even if Ordinance No. 92–85

did not contain the specific language required for tax purposes, that ordinance still required the city to honor the PERS pick-up provision for Local 1039–A.

R.C. 4117.10 required the Portsmouth City Council to approve or reject the proposed wage-reopener agreement *as a whole*. See R.C. 4117.10(B). Furthermore, if the council had failed to act within thirty days after the city submitted the agreement for approval, the agreement would have been deemed approved. See *id.* The parties signed the wage-reopener agreement on July 14, 1992. The pertinent part of the Portsmouth City Council Ordinance No. 92–85, enacted August 10, 1992, states:

"Be it ordained by the Council of the City of Portsmouth, Ohio:

"SECTION I: That the City Council of the City of Portsmouth, Ohio, hereby ratifies the agreement entered into by the City of Portsmouth, Ohio, with the American Federation of State, County and Municipal Employees (AFSCME), Ohio Council 8, AFL–CIO, Local 1039–A, to provide for a wage adjustment, said agreement entered into July 14, 1992."

An arbitrator "is the final judge of both the law and the facts, and a court will not set aside an arbitrator's award except in the limited circumstances set forth in R.C. 2711.10." *Cincinnati v. Queen City Lodge No. 69, FOP* (Jan. 29, 1999), Hamilton App. No. C–980031, unreported, 1999 WL 34603, citing *Huber Hts., supra,* 73 Ohio App.3d at 73–74, 596 N.E.2d at 574.

The arbitrator's finding that Ordinance No. 92–85 ratified the entire 1992 wage-reopener agreement is consistent with the law and the facts. We find that the arbitrator's decision to require the city to pay the PERS pick-up for the 1993 contract year draws its essence from the 1991 CBA and the 1992 wage-reopener agreement. We also find that the arbitrator's decision was not arbitrary, capricious, or unlawful. We, therefore, defer to the arbitrator's decision to award Local 1039–A the PERS pick-up for the 1993 contract year, as did the trial court.

### III

The city's primary argument is that the arbitrator exceeded his authority by finding that the city must pay the PERS pick-up for the contract years covered by the 1994 CBA. The city argues that the arbitrator added language to the 1994 CBA by requiring the city to pay the PERS pick-up for the 1994 through 1996 contract years. In addition, the city argues that the arbitrator ignored language in the 1994 CBA that superseded the 1992 wage-reopener agreement. Thus, the city argues that the arbitrator exceeded his authority under R.C. 2711.10(D).

R.C. 2711.10 provides that a court may vacate an arbitration award if the arbitrator exceeds his or her power and authority. R.C. 2711.10(D). While an

arbitrator has broad authority to interpret a CBA, the arbitrator's decision must "draw its essence" from the terms of the agreement. See *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 180, 572 N.E.2d 71, 74. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation, supra,* at paragraph one of the syllabus.

The 1994 CBA did not provide for a PERS pick-up for Local 1039–A employees. Nevertheless, the arbitrator determined that the city was required to pay the PERS pick-up during the term of the 1994 CBA pursuant to R.C. 4117.10. The relevant portion of R.C. 4117.10(A) provides:

"Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees."

The arbitrator reasoned that an ordinance authorizing the PERS pick-up would be effective under R.C. 4117.10(A). The arbitrator found that Ordinance No. 92–85, which ratified the 1992 wage-reopener agreement with Local 1039–A, ratified the entire 1992 agreement, including the PERS pick-up. Therefore, the arbitrator found that the 1992 wage-reopener agreement continued to be effective and binding upon the parties during the term of the 1994 CBA.

The city argues that the arbitrator exceeded specific limits to his authority imposed by the 1994 CBA. The CBA provides:

"The arbitrator shall have no power or authority to make any decision:

"1. Adding to, subtracting from, modifying, changing or amending in any way the terms and provisions of this Agreement, or any written agreement between the parties.

"2. Concerning the establishment of wage rates not negotiated as part of this Agreement."

The city argues that an ordinance is effective under R.C. 4117.10(A) only when there is no agreement on a given matter. According to the city, however, the 1994 CBA contains an agreement between the parties on the issue of wages. Furthermore, that agreement does not provide for a PERS pick-up. The city argues that the arbitrator's decision to require the city to pay the PERS pick-up during the term of the 1994 CBA established new wage rates. Therefore, the city contends that the arbitrator exceeded specific limits on his authority and that the trial court should have vacated or modified the arbitration award.

■ The city also argues that the arbitrator ignored "zipper clauses" in the 1994 CBA. A zipper clause, as described by the city, is a contract provision that limits the agreement between the parties solely to those matters included in the CBA. The city argues that the zipper clauses in the 1994 CBA superseded the 1992 wage-reopener agreement beginning with the 1994 contract year. Thus, the city contends that the arbitrator exceeded his authority by disregarding these zipper clauses.

The 1994 CBA contains a number of zipper clauses. Specifically, the CBA provides:

"Article 1: Intent and Purpose.

" * * *

"D. This agreement supersedes all other agreements, clauses, practices and memorandums between Management and the Union and, unless made a written part of this agreement, shall be considered null and void on the effective date of this agreement."

"Article 24: Integrity of Agreement.

"A. The City and the Union agree that the terms and provisions contained in this written Agreement constitute the entire agreement between the parties and supersede all previous communication, understandings, or memorandums of understanding pertaining to any matter set forth in this Agreement or to any other matter."

The arbitrator determined that the parties did not intend for the zipper clauses to nullify the 1992 wage-reopener agreement. During the negotiations for the 1994 CBA, the city negotiator was unaware of the PERS pick-up clause in the 1992 wage-reopener agreement, while the negotiators for Local 1039–A assumed that the city had been paying this benefit since 1993. Thus, the arbitrator concluded that there was no meeting of the minds between the parties regarding the application of the zipper clauses to the 1992 wage-reopener agreement.

■ The difficulty in the case *sub judice* is that the 1994 CBA did not state whether the parties specifically intended to supersede the 1992 wage-reopener agreement. The zipper clauses appear to prohibit application of any other agreement between the parties during the term of the 1994 CBA. Thus, one might conclude that the arbitrator's decision is legally incorrect. However, it is not enough that the arbitrator's decision is legally or factually incorrect. See *Motor Wheel*, 98 Ohio App.3d at 51, 647 N.E.2d at 847. Rather, the arbitrator's award must fail to draw its essence from the collective bargaining agreement before a court will vacate the award. See *Mahoning Cty. Bd. of Mental Retardation*, 22 Ohio St.3d at 83, 22 OBR at 97–98, 488 N.E.2d at 875. For the

reasons stated below, we find that the arbitrator's decision draws its essence from the collective bargaining agreement.

The arbitrator based his decision in part on the city's disparate treatment of the PERS pick-up for Local 1039 and Local 1039–A employees. The 1994 CBA with Local 1039 did not provide for a PERS pick-up and included zipper clauses similar to those in the 1994 CBA with Local 1039–A. Nevertheless, the city paid this benefit for Local 1039 employees during the 1994 through 1996 contract years. Based on these facts, the arbitrator determined that the 1992 wage-reopener agreement could continue in effect during the term of the 1994 CBA in spite of the zipper clauses.

It is possible that a court interpreting the 1994 CBA would not have considered extrinsic evidence such as the city's course of performance with respect to Local 1039. An arbitrator, however, is free to "look for guidance from many sources" in interpreting a collective bargaining agreement. *United Steelworkers, supra,* 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428. The disparity between the city's treatment of Local 1039 and Local 1039–A supports the arbitrator's determination that the parties did not intend for the 1994 CBA to supersede the 1992 wage-reopener agreement. At a minimum, it indicates that the city is being disingenuous in arguing that it should be excused from paying the PERS pick-up because of its own failure to begin paying this benefit in the first place.

A more important consideration is that the 1994 CBA does not provide for specific wage rates. Rather, the article on wages merely provides for annual percentage increases. This is a departure from the 1992 wage-reopener agreement, which specified the actual wage rates that the employees were to receive. Thus, to determine the wage rates under the 1994 CBA, one must necessarily refer to the rates that were in effect prior to the effective date of the 1994 agreement. These rates are contained in the 1992 wage-reopener agreement.

One could interpret the 1994 CBA as superseding the 1992 wage-reopener agreement. However, the essence of the wage-rate provision in the 1994 CBA is to provide the Local 1039–A employees with annual percentage increases over their previous wages. Thus, one could also interpret the 1994 agreement as incorporating the 1992 agreement. When a collective bargaining agreement is capable of more than one interpretation, courts must defer to the interpretation of the arbitrator. See *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d 174, 556 N.E.2d 1186, syllabus.

We find that the arbitrator's award draws its essence from the collective bargaining agreement. Thus, Local 1039–A was entitled to have the trial court confirm the arbitrator's award as a matter of law. The city does not raise any

**436**

genuine issue of material fact that would preclude such a result. Therefore, the trial court properly granted summary judgment in favor of Local 1039–A.

For the reasons stated above, we overrule appellant's sole assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE, P.J., and HARSHA, J., concur in judgment only.