**AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, UNIVERSITY OF TOLEDO CHAPTER, et al.**

v.

**UNIVERSITY OF TOLEDO.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI2002–02761.

Decided May 5, 2003.

Marilyn L. Widman and Joseph J. Allotta, for plaintiffs.

Cheryl F. Wolff, for defendant.

CHARLES S. WITTENBERG, Judge.

{¶ 1} This matter is before the court upon a complaint and application to vacate an arbitrator's award in favor of the University of Toledo ("defendant") and against plaintiffs, American Association of University Professors, University of Toledo Chapter ("AAUP"), and Dr. Margaret Evans.

## I. FACTS

{¶ 2} Pursuant to a collective bargaining agreement with defendant, AAUP is the bargaining representative for tenure-track faculty members at defendant university. The contract provides for a grievance procedure that includes

arbitration for resolution. This appeal arises from the grievance of Dr. Evans, after defendant refused to award her tenure and promotion during the academic year 1999–2000. After several days of hearing and submission of evidence by the parties, the arbitrator made the following findings in his opinion and award, dated January 28, 2002:

{¶ 3} Dr. Evans, on March 10, 1994, was appointed as an assistant professor in developmental psychology in the Department of Psychology at defendant university and began her duties in September 1994. Dr. Evans was hired in a tenure-track position, and the granting of tenure and promotion was dependent upon Dr. Evans's meeting certain standards in teaching, service, and professional activity as set forth in Articles 8 and 9 of the collective bargaining agreement.

{¶ 4} Generally, tenure-and-promotion decisions are made during the sixth year of employment based on activities during the previous five years. During each of such five years, assistant professors complete an Annual Report of Professional Activities ("ARPA"), and based upon the ARPAs they are evaluated by their Department Personnel Committee ("DPC"), their department chair, their College Committee on Academic Personnel ("CCAP"), their dean, and the University Committee on Academic Personnel ("UCAP"). For the five academic years between 1994 and 1999, Dr. Evans completed the ARPAs and received evaluations per the contract.

{¶ 5} In September 1999, Dr. Evans initiated the tenure-and-promotion process when she submitted her dossier. The DPC voted seven to three, with three abstentions, to recommend Dr. Evans for tenure and promotion. However, Dr. Robert Haaf, the chairman of the Department of Psychology, recommended against granting tenure and promotion based upon Dr. Evans's limited publication record. Dr. Evans requested that Dr. Haaf reconsider his recommendation, but Dr. Haaf refused to change his opinion. The CCAP recommended by a vote of seven to one that Dr. Evans be accorded tenure and promotion. David Stern, the Dean of the College of Arts and Sciences, recommended against tenure and promotion. He pointed out that Dr. Evans's record of publications has "not met the standards to which she has consistently been held since her initial appointment in 1994." Dr. Evans sought a reconsideration from Dr. Stern, but he confirmed his recommendation against tenure and promotion. Subsequently, the UCAP voted eight to one in favor of awarding tenure to Dr. Evans, but voted five to four against promotion to associate professor.

{¶ 6} On March 22, 2000, Provost Henry Moon recommended a denial of tenure and promotion. After it was determined that Provost Moon's letter was intended for a different faculty member, Moon issued a revised letter with a negative recommendation, stating that Dr. Evans "had not provided sufficient evidence of the quality" of her scholarship. Dr. Evans and the union grievance chairperson

met with Moon and provided updated information. Moon agreed to review the matter with Dr. Stern, and on June 7, 2000, Dr. Evans received a letter, dated May 18, 2000, indicating that Moon would not support her application for tenure and promotion.

{¶ 7} On June 16, 2000, Dr. Evans received a letter from Interim President William Decatur, indicating that he did not support her tenure and promotion. President Decatur informed her that her appointment for 2000–2001 would be a terminal appointment.

{¶ 8} On July 10, 2000, Dr. Evans, through the AAUP, filed a grievance. The matter was heard by an arbitrator, and on January 28, 2002, the arbitrator issued his decision denying the grievance and finding in favor of defendant. On April 29, 2002, AAUP and Dr. Evans filed their complaint to vacate the arbitration award. The matter is now before the court on cross-motions for summary judgment filed by plaintiffs and defendant.

## II. STANDARD FOR REVIEW OF ARBITRATION DECISION

{¶ 9} R.C. 2711.10 limits this court's review of an arbitrator's decision and award. This section provides as follows:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by corruption, fraud, or undue means.

"(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 10} Public policy favors and encourages arbitration, and the courts are indulged to favor the regularity and integrity of proceedings before the arbitrator. *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 84, 22 OBR 95, 488 N.E.2d 872. The Supreme Court has placed restrictions on a reviewing court's authority to vacate an arbitrator's award pursuant to R.C. 2711.10(D) so as not to undermine the integrity and purposes of the arbitration system. See *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186. In reaching its decision, a reviewing court is not to engage in a review of the

arbitrator's findings of fact or interpretation of the contract. *Goodyear v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 520, 71 O.O.2d 509, 330 N.E.2d 703; *Lorain City School Dist. Bd. of Edn. v. Lorain Edn. Assn.* (Mar. 14, 2001), Lorain App. No. 00CA007653, 2001 WL 251340.

{¶ 11} In the case sub judice, plaintiffs rely upon R.C. 2711.10(D) and maintain that the arbitrator exceeded his authority. As the Sixth District Court of Appeals has stated:

"Interpreting R.C. 2711.10(D), the Supreme Court of Ohio in *Findlay, supra,* at paragraph two of the syllabus, held that if the arbitrator's award 'draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious' it must be confirmed. 'An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful.' *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus. Accordingly, it is the duty of a reviewing court 'to determine whether the arbitrator's award was reached in a rational manner from the collective bargaining agreement.' *Ohio Office of Collective Bargaining v. Ohio Civil Service Employees Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 180, 572 N.E.2d 71. A reviewing court may not substitute its interpretation of the collective bargaining agreement for that of the arbitrator. *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d 174, 177–178, 556 N.E.2d 1186. However, the arbitrator exceeds his authority if he adds to, subtracts from, or alters the collective bargaining agreement. *Id.*" *Ohio Assn. of Pub. School Emp., AFSCME, Local 4 & Local 538 v. Anthony Wayne Local School Dist.* (Dec. 4, 1998), Lucas App. No. L–98–1114, 1998 WL 833572.

## III. ANALYSIS

### A. Applicability of Section 8.1.6.3, Article 8 to Dr. Evans

{¶ 12} Plaintiffs argue that defendant failed to properly notify Dr. Evans of her being denied tenure and promotion in violation of Section 8.1.6.3, Article 8 of the collective bargaining agreement. This section provides as follows:

"8.1.6 Notification of nonrenewal of members without tenure shall be given in writing by the President or the President's designee in accordance with following standards:

"8.1.6.1 Not later than March 1 of the first academic year of service, if the appointment expires at the end of the Spring Semester, or, if the appointment

terminates at any other time, at least three months in advance of its termination.

"8.1.6.2 Not later than December 1 of the second academic year of service, if the appointment expires at the end of the Spring Semester, or, if the appointment terminates at any other time, at least six months in advance of its termination.

"8.1.6.3 At least twelve months before the expiration of an appointment after two or more continuous years of service in such position."

{¶ 13} Plaintiffs contend that defendant failed to comply with the notice requirement set forth in Section 8.1.6.3 because Dr. Evans received a letter on June 16, 2000, from President Decatur terminating her appointment on May 11, 2001. The arbitrator agreed with defendant that Section 8.1.6.3 did not apply to faculty members applying for tenure, but, instead, applied to faculty members being nonrenewed pursuant to the annual review process. Plaintiffs argue that the arbitrator exceeded his authority by adding an exception to Section 8.1.6.3 that is not included in the collective bargaining agreement.

{¶ 14} The arbitrator's interpretation of the applicability of Section 8.1.6.3 is not unreasonable or arbitrary. Section 8.1.2 provides that each faculty member without tenure shall serve a probationary period of not longer than six years. Section 8.1.3 then provides:

"Evaluation for tenure must take place no later than the final year of the probationary period. * * * If the Board grants tenure, it shall become effective with the beginning of the next academic year. If tenure is not granted, then appointment for the next academic year will be a Terminal Appointment."

{¶ 15} By the terms of the collective bargaining agreement, Dr. Evans's final year of probation was her terminal appointment when she was not granted tenure. No notice of nonrenewal was required because there was nothing to be renewed. Accordingly, the arbitrator's decision as to the non-applicability of Section 8.1.6.3 will not be vacated.

### B. Delayed Processing of the Grievance

{¶ 16} Plaintiffs argued to the arbitrator that defendant failed to follow the grievance procedure of the collective bargaining agreement, and that such failure unreasonably delayed the arbitration hearing. Plaintiffs sought from the arbitrator an award to Dr. Evans of an additional contract for one academic year. The arbitrator did not find the argument to be well taken.

{¶ 17} Article 19 of the collective bargaining agreement establishes the procedure for filing and processing grievances. Section 19.3.1 requires the initial filing

of a grievance to be submitted to the Assistant Vice President for Academic Affairs–Faculty Relations. The Assistant Vice President for Academic Affairs–Faculty Relations, after review of the grievance, shall promptly forward it to the appropriate supervisor for hearing within ten days of receipt. Section 19.3.2 provides that the department chairperson or other appropriate supervisor shall, within ten days, meet with the grievant and AAUP representative to attempt resolution. If the grievant is unsatisfied with the answer, she may appeal to the Assistant Vice President for Academic Affairs–Faculty Relations to have the grievance reviewed at the level of dean. Pursuant to Section 19.3.3, the dean, within fourteen days, shall meet with the grievant and AAUP representative to attempt resolution. If resolution is unsuccessful, the grievant may, within ten days, appeal to the Assistant Vice President for Academic Affairs–Faculty Relations to have the grievance reviewed by the Vice President for Academic Affairs. If resolution is again unsuccessful, then, under Section 19.3.4, the AAUP may, within ten days, appeal to the Assistant Vice President for Academic Affairs–Faculty Relations to have the grievance reviewed by the Internal Arbitration Board ("IAB"). Section 19.3.5 provides that the IAB consists of six members, three appointed by the president of the university and three appointed by the president of AAUP. Evidence and testimony is presented to the IAB and its decision is final and binding if agreed upon by at least four of its members. Section 19.3.6 states that if the IAB does not render a final and binding decision, the AAUP shall have the sole right to submit the grievance to final and binding arbitration by an external arbitrator.

{¶ 18} Plaintiffs contend that defendant failed to process the grievance in accordance with Article 19. According to plaintiffs, from September 2000 through January 2001, AAUP made repeated requests to the Assistant Vice President for Academic Affairs to move the grievance forward. Plaintiffs maintain that such was in violation of the collective bargaining agreement, which requires the Assistant Vice President for Academic Affairs to review the grievance and promptly forward it for hearing before the appropriate supervisor. Plaintiffs argue that, as a result, they were denied any opportunity to resolve the grievance in a timely manner at a level before arbitration.

{¶ 19} Defendant does not dispute that the Assistant Vice President for Academic Affairs did not forward the grievance to the appropriate supervisor at certain steps in the grievance process. It notes that the matter was presented to the IAB, and the parties eventually agreed to submit the grievance to external arbitration.

{¶ 20} When the Assistant Vice President failed to forward the grievance for hearing by the appropriate supervisor, plaintiffs' remedies were to file the grievance at the next successive step in the grievance procedure. Section 19.11

26

of the collective bargaining agreement provides that "[u]pon failure of a hearing officer to provide a response within the time limits provided in this Article, the Union may appeal to the next step." Thus, when the grievance was not forwarded by the Assistant Vice President and the time limit had expired, there was a failure to provide a response within the applicable time limits, and plaintiffs, pursuant to the collective bargaining agreement, could file the grievance at the next successive step in the grievance procedure. "Therefore, [defendant's] failure to timely file its response does not result in a default against [defendant]; instead, appellant could have proceeded to step four of the grievance procedure." *In re Arbitration between OCSEA/AFSCME & Dept. of Rehab. & Corr.* (June 29, 1993), Franklin App. No. 93AP–179, 1993 WL 271033. The matter was in fact submitted to external arbitration, the final step in the grievance process, and a decision was rendered on the substance of plaintiffs' grievance.

{¶ 21} Moreover, an award of an additional year of employment by the arbitrator would exceed his authority. The exclusive remedy is set forth in the collective bargaining agreement at Section 19.11, and an award as sought by plaintiffs would be an impermissible deviation from such contractual remedy, and would not draw its essence from the agreement. *Huber Hts. v. Fraternal Order of Police* (1991), 73 Ohio App.3d 68, 596 N.E.2d 571.

## C. Arbitrator's Denial of Grievance as to Tenure and Promotion

{¶ 22} Plaintiffs challenge the decision of the arbitrator, asserting that he wrongfully permitted defendant to impose requirements for promotion and tenure on Dr. Evans that were not within the terms of the collective bargaining agreement. Plaintiffs maintain that Dr. Evans fulfilled the requirements for tenure and promotion and that the arbitrator disregarded the provisions of the agreement when he denied her grievance. Plaintiffs set forth two arguments contending that the arbitrator departed from the essence of the collective bargaining agreement: (1) the arbitrator ignored the terms of the collective bargaining agreement by ruling that he had no authority to overrule defendant's denial of the application for tenure and promotion; and (2) the arbitrator improperly accepted as valid the terms and conditions imposed on Dr. Evans through the evaluation process for promotion and tenure.

{¶ 23} In his decision, the arbitrator stated the following:

"The role of Arbitrators in the process is limited. They are charged with seeing that the contract has been complied with. The Arbitrators are not supposed to impose their views on the parties regarding what performance they feel is or is not deserving of tenure and promotion. If they were to do so,

there would be no uniform standards but a different standard would exist depending on the particular Arbitrator selected to hear the case."

{¶ 24} Further, the arbitrator noted that although he "may have reached a different conclusion than Dr. Haaf and Dr. Stern, there is nothing in their behavior that is arbitrary, capricious, or unreasonable. It would be inappropriate for the Arbitrator to substitute his judgment for those who are charged with making tenure and promotion decisions under the collective bargaining agreement." Plaintiffs assert that the arbitrator ignored the express language of the agreement and wrongfully held that he did not have any authority to alter the decision of defendant regarding the denial of tenure and promotion of Dr. Evans.

{¶ 25} Plaintiffs have misconstrued the arbitrator's statements regarding his role in the grievance process. He did not indicate that he lacked the authority to find a violation of the collective bargaining agreement by defendant regarding Dr. Evans's request for tenure and promotion. Rather, it was for the arbitrator to determine whether the defendant's decision to deny Dr. Evans tenure and promotion was consistent with the provisions set forth in the collective bargaining agreement. As the arbitrator noted, he was "charged with seeing that the contract has been complied with." As stated at Section 19.4.3, Article 19 of the agreement, in grievances concerning promotions and tenure, the arbitrator "shall only have the power to remand the negative decision being grieved with directions as to procedures to be followed and information to be considered." Clearly, the arbitrator's role did not include a determination of whether Dr. Evans's performance was deserving of tenure and promotion.

{¶ 26} Next, plaintiffs argue that the arbitrator incorrectly permitted defendant to impose requirements for promotion and tenure on Dr. Evans that were not supported by the collective bargaining agreement. Plaintiffs assert that Dr. Evans fulfilled the requirements as set forth in the agreement, that defendant violated the agreement by denying Dr. Evans tenure and promotion, and that the arbitrator disregarded the express terms of the agreement by denying the grievance.

{¶ 27} Section 8.1.1 provides that an award of tenure by the Board of Trustees "shall be selective and conditioned upon positive recommendation through the evaluation process described in Article 9.0." Section 9.1 sets forth the evaluation procedure, which is based upon teaching, professional activity, and service of the applicant. The dispute as to Dr. Evans's application for tenure focused on her professional activity. Section 9.1.2.2 states:

"It is intended that the member shall utilize the member's expertise to address problems in the member's discipline or area of specialization through profes-

sional, scholarly and/or creative activity which clearly contributes to the discipline and/or the wider society through:

"(1) Scholarly investigation, creative activity and/or research of an original and/or previously unreported nature; or

"(2) Applied research (including professional publications and patents), investigation, or scholarly analysis of existing research, information, and creative endeavors resulting in the development of new data, information, applications, and/or interpretations; or

"(3) Artistic creations, shows and performances.

"A faculty member shall give documented evidence of the member's contribution to the member's discipline or area of specialization by its publication or dissemination through (A) the classroom, (B) among practitioners in the member's discipline, or (C) among a wider community.

"Such evidence may include but is not limited to:

"(1) Funded and non-funded research,

"(2) Preparation of research proposals for funded research,

"(3) Publication of articles, books, monographs, conference proceedings, editorships or reporters to professional publications,

"(4) Presentation of papers at professional meetings.

"The preparation of grant proposals for outside agencies shall be considered as professional activity if said preparation involves scholarly activity (e.g. teaching, research or service projects) of a substantial nature, and the applicant provides an abstract documenting such activity and the importance of the endeavor to the discipline or the University. The above condition may also apply for the administration of a grant project, patent application or copyright application insofar as proper evidence is presented which documents that such grant administration, patent application or copyright application meets the requirements as set forth above in this section."

{¶ 28} Plaintiffs maintain that defendant university imposed arbitrary, unreasonable, and capricious terms and conditions on Dr. Evans through the evaluation process. Plaintiffs contend that Dr. Haaf and Dr. Stern relied upon reasons that were not included in Dr. Evans's appointment letter, that the reasons for denial of tenure are not found in Articles 8 and 9 of the collective bargaining agreement, and that such reasons were not used to evaluate previously tenured faculty in the Department of Psychology.

{¶ 29} Specifically, plaintiffs assert that Dr. Haaf and Dr. Stern required Dr. Evans to demonstrate "scholarly productivity" rather than "professional activity" as is required by the agreement, and that she was required to produce a specific number of publications during her pre-tenure employment.

{¶ 30} Again, the court's review is limited by R.C. 2711.10. In the case sub judice, plaintiffs specifically argue that the arbitrator exceeded his authority pursuant to R.C. 2711.10(D) when he concluded that the university did not violate the collective bargaining agreement by denying Dr. Evans tenure and promotion.

{¶ 31} Initially, the court notes that plaintiffs' assertion that Dr. Evans was somehow required to meet a higher standard of professional activity than that of previously tenured faculty is without merit. As the arbitrator noted, the colleagues referred to by plaintiffs were not in the application process. They were either already tenured or had not yet applied for tenure.

{¶ 32} In determining whether Dr. Evans met the requirement of professional activity, the arbitrator noted that Dr. Haaf "felt that the grievant's publication record of a monograph, a book chapter, and a journal article was not sufficient for tenure and promotion in a Ph.D. granting department." In addition, the arbitrator stated that Dr. Stern concluded that "the record of research accomplishment [was] too thin, and future promise cannot by itself carry the day." The arbitrator further noted that the statements by Dr. Haaf and Dr. Stern were reflected in comments by the DPC and the CCAP as well as by external reviewers. While all were impressed by Dr. Evans's quality of research, several noted concerns such as "the grievant had few publications," the "quantity of her [Dr. Evans's] scholarly output," and that "quantity is somewhat troubling." Likewise, the arbitrator noted that Dr. Evans was aware of the requirements for tenure and promotion as it related to quantity. In a responsive correspondence describing the difficulties of publishing in her field, Dr. Evans stated:

"The expectation is that faculty should average one publication a year of an empirical article or scholarly contribution, to achieve tenure. This means four to five publications during the tenure period, not necessarily one in every calendar year."

{¶ 33} Further, pursuant to Section 9.1.4 of the agreement titled "Frequency and Timing of Evaluations," untenured members were to be evaluated annually and recommendations as to continued employment and a statement of steps to be taken to correct any deficiencies were to be included. As the arbitrator noted, several recommendations stemming from these reviews were made to Dr. Evans relating to her "rate of productivity" and having a "solid publication track record in line with her department's expectation at the time of the tenure review."

{¶ 34} The requirements of professional, scholarly, or creative activity, as outlined above in Section 9.1.2.2 of the agreement, clearly indicate that publication may be a factor to consider in determining whether the criteria had been met. While it does not indicate a specific number of publications that are required, it also does not indicate the level of quality of the applicant's work that is acceptable. The agreement does, however, provide at Section 9.1.5.11:

"It shall be the duty of each evaluating unit to make an independent judgment about the merits of each candidate."

{¶ 35} Further, Section 9.1 of the agreement provides:

"At each level of recommendation specified herein, evaluation of the member's overall contribution shall be based on the following areas: The percentage ranges listed for each criterion shall be the weight evaluators give to it, with the sum of the three assigned percentages totaling 100%."

{¶ 36} By the terms of the agreement, the evaluating unit has great latitude in determining how much weight to give each of the enumerated criteria that may be considered in determining whether an applicant has met a specified requirement. Thus, if Dr. Stern or Dr. Haaf decided to place a greater emphasis on the number of publications as well as the quality of the applicant's professional activity, such would not fall outside the terms of the collective bargaining agreement as determined by the arbitrator.

{¶ 37} Based on the foregoing, the court finds that the arbitrator did not exceed his authority in denying plaintiffs' grievance against the university. Summary judgment is therefore granted in favor of defendant, the University of Toledo, and the motion for summary judgment filed by plaintiffs is denied.

Judgment for defendant.