The STATE of Ohio ex rel. CRUMBLEY et al.

v.

CITY OF CLEVELAND.

[Cite as *State ex rel. Crumbley v. Cleveland,* 185 Ohio App.3d 82, 2009-Ohio-6100.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90900.

Decided Nov. 13, 2009.

Fred D. Middleton, for relators.

Robert J. Triozzi, Cleveland Law Director, L. Stewart Hastings, Chief Assistant Law Director, and William M. Menzalora, Assistant Law Director, for respondent.

Per Curiam.

{¶ 1} On January 11, 2008, Jesse Crumbley filed a verified complaint for writ of mandamus against the city of Cleveland asking this court to order the city to pay Crumbley $107,519 in back pay with interest at a rate of ten percent per year, starting from the date of the award, plus attorney fees. On March 14, 2008, the city filed a motion to dismiss the complaint due to relator's failure to comply with R.C. 2731.04. On March 18, 2008, relator filed a motion to amend the verified complaint and on March 19, 2008, filed a motion in opposition to the motion to dismiss.

{¶ 2} On April 9, 2008, this court denied the motion to dismiss and allowed relator to amend his complaint. Relator subsequently filed a seconded amended complaint in which trustee Virgil E. Brown Jr. was added as a new party relator as a result of Crumbley's bankruptcy proceeding. Respondent filed its answer to the second amended complaint on July 14, 2008. Thereafter, on September 3, 2008, relators' counsel filed a notice of withdrawal.

{¶ 3} On December 1, 2008, this court ordered respondent to submit a dispositive motion and provided relators time to respond to that filing. On

December 12, 2008, in compliance with this court's order, the city submitted its motion for summary judgment. Thereafter, on December 23, 2008, attorney Fred Middleton entered his appearance on behalf of Crumbley and on January 9, 2009, also entered his appearance on behalf of Virgil E. Brown Jr. Thereafter, on February 25, 2009, counsel for relators requested additional time to conduct discovery and to oppose the city's motion for summary judgment. While the motion was opposed by the city, this court granted the motion on March 2, 2009, and gave relators until April 27, 2009, to conduct additional discovery and to oppose the motion for summary judgment.

{¶ 4} Thereafter, on May 5, 2009, this court ordered the parties to appear before the conference attorneys in an attempt to settle this matter. The settlement conference was held on June 18, 2009, but the parties were unable to settle. On June 20, 2009, relators filed a motion for summary judgment. Thereafter, on August 10, 2009, this court denied both relators' and respondent's motions for summary judgment. On August 27, 2009, and August 31, 2009, this court held a hearing on Crumbley's complaint. Based upon the testimony and documents submitted during that hearing, we grant, in part, Crumbley's complaint for a writ of mandamus.

{¶ 5} The facts before this court indicate that Crumbley worked as a corrections officer for the city of Cleveland until December 23, 1997, when his employment was terminated. Crumbley filed a grievance against the city, and the matter proceeded to arbitration before arbitrator Bernard Levine. Arbitrator Levine determined that Crumbley was unjustly terminated and ordered the city "to reinstate [Crumbley] to his former or substantially equivalent position without any loss of seniority. In addition, [Crumbley] is to be paid back pay from the time of his suspension to the time of an offer of reinstatement, less any interim earnings. If [Crumbley] incurred any expenses in obtaining and maintaining any interim employment which he would not have encountered in his primary employment with the City, those expenses shall be deducted from his interim earnings before the interim earnings are deducted from back pay."

{¶ 6} In order for this court to issue a writ of mandamus, Crumbley must establish that he has a clear legal right to the requested relief, that the respondent has a clear legal duty to perform the requested relief, and that there is no adequate remedy at law. *State ex rel. Manson v. Morris* (1993), 66 Ohio St.3d 440, 613 N.E.2d 232, citing *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225. Moreover, mandamus is an extraordinary remedy which is to be exercised with caution and only when the right is clear. "The duty to be enforced by a writ of mandamus must be specific, definite, clear and unequivocal." *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 205, 614 N.E.2d 827. It should not be issued in doubtful cases. *State ex rel. Taylor v.*

*Glasser* (1977), 50 Ohio St.2d 165, 4 O.O.3d 367, 364 N.E.2d 1; *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 50 O.O. 465, 113 N.E.2d 14; *State ex rel. Connole v. Cleveland Bd. of Edn.* (1993), 87 Ohio App.3d 43, 621 N.E.2d 850.

{¶ 7} Additionally, if a relator had an adequate remedy at law, regardless of whether it was used, relief in mandamus is precluded. *State ex rel. Tran v. McGrath* (1997), 78 Ohio St.3d 45, 676 N.E.2d 108; *State ex rel. Boardwalk Shopping Ctr., Inc. v. Court of Appeals for Cuyahoga Cty.* (1990), 56 Ohio St.3d 33, 564 N.E.2d 86; *State ex rel. Provolone Pizza, L.L.C. v. Callahan*, Cuyahoga App. No. 88626, 2006-Ohio-6600, 2006 WL 3635355; *State ex rel. Grahek v. McCafferty*, Cuyahoga App. No. 88614, 2006-Ohio-4741, 2006 WL 2627461.

{¶ 8} Regarding writs filed in response to back-pay issues, the Supreme Court of Ohio has held that an action in mandamus is maintainable by a reinstated public employee to recover compensation due him for the period of time during which he was wrongfully excluded from his employment, provided the amount recoverable is established with certainty. *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462. The court also stated that the amount of compensation recoverable was that which the employee would have received had he not been wrongfully dismissed, reduced by the amount he earned during the discharge period. Id. at 196, 61 O.O.2d 425, 291 N.E.2d 462.

{¶ 9} In this matter, we find that Crumbley has established that he has a clear legal right to back pay and that the city has a clear legal duty to pay him his back pay for the time period he was terminated. We further find that Crumbley does not have an adequate remedy at law. Accordingly, the issue we must now determine is the amount of the back-pay award.

{¶ 10} The parties have stipulated that the total amount of compensation due Crumbley, less any deductions for interim earnings, is $125,132.96. According to the testimony of Ms. Hetrick, the payroll supervisor for the city of Cleveland, this figure represents the gross wages Crumbley would have earned during the period from December 23, 1997, through May 7, 2002.

{¶ 11} Crumbley also asserts that he is entitled to other compensation such as longevity pay, uniform-allowance pay, uniform-maintenance pay, holiday pay, sick time, and dormitory-unit-premium pay. The city argues that Crumbley is not entitled to any of these amounts because the arbitrator only ordered that Crumbley receive back pay rather than ordering a "make whole" award.

{¶ 12} We disagree with the city's position. The purpose of a back-pay award is to make the wrongfully terminated employee whole and to place the employee in the same position he would have been absent such termination.

*State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298. According to the Collective Bargaining Agreement ("CBA") between the city and the Ohio Patrolman Benefits Association to which Crumbley belongs, Crumbley was entitled to receive longevity pay, uniform-allowance pay, and uniform-maintenance pay. We further find that the amounts have been established with certainty based upon the parties' agreement: $1,625 for uniform-allowance pay, $875 for uniform-maintenance pay, and $1,650 for longevity pay.[1] Accordingly we order that Crumbley receive these amounts.

{¶ 13} Crumbley also asserts that he is entitled to holiday pay, vacation pay, and sick time. Under the CBA, Crumbley was entitled to nine specific paid holidays, (1) New Year's Day, (2) Dr. Martin Luther King Jr. Day, (3) President's Day, (4) Good Friday, (5) Memorial Day, (6) Independence Day, (7) Labor Day, (8) Thanksgiving Day, and (9) Christmas Day, plus two floating holidays.

{¶ 14} According to the testimony of Hetrick, holiday pay and the two floating holidays were already included in the computation of Crumbley's basic pay. While there was testimony that an employee who worked on a holiday would be paid 12 hours, Crumbley did not establish with certainty that he would have worked any of the above holidays. Accordingly, if we were to grant Crumbley additional holiday pay, we would be providing Crumbley with a double payment, which would go beyond the obligation of making him whole. *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 21 O.O.3d 228, 423 N.E.2d 1099.

{¶ 15} Crumbley also asks this court to award him sick time. According to the CBA, Crumbley is entitled to ten hours of sick leave for every month worked. However, in order for this court to pay Crumbley for his earned sick time, we would have to assume that Crumbley would never have taken a day of sick time for more than four years. The record does not support such an assumption. Accordingly, we find that the amount of sick time earned cannot be established with certainty. *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 22 O.O.3d 98, 427 N.E.2d 515.

{¶ 16} Crumbley further requests that this court order the city to pay him dormitory-unit-premium pay. According to the CBAs in effect during the subject time frame, an employee whose daily assignment or overtime assignment was to a dormitory unit received a $.35–per–hour premium. However, we find that the evidence does not establish that Crumbley would have earned this adjustment. Crumbley failed to introduce any evidence, such as prior earning

---

1. The agreed-upon amount of longevity pay was determined to be $1,550. However, the city of Cleveland acknowledged that it owes Crumbley an additional $100 in longevity pay for 2009.

statements from the city, to establish that he regularly worked in a dormitory unit. Accordingly, due to the lack of any quality evidence, we find that Crumbley failed to establish with certainty that he was entitled to the award of dormitory-unit-premium pay. *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 9 OBR 342, 459 N.E.2d 520.

{¶ 17} Accordingly, we will now address and determine Crumbley's interim wages. According to the Supreme Court of Ohio, "The principle of mitigation of damages applicable in a suit to recover compensation for a period of wrongful exclusion from employment is an affirmative defense and the burden of proof on that issue resides upon the employer responsible for the wrongful discharge." *State ex rel. Martin v. Columbus* (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123.

{¶ 18} At the hearing, respondent introduced Crumbley's tax returns for the period in question and the following chart to demonstrate Crumbley's purported interim earnings:

| NAME | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|---|
| Candlewood | UNK | 1174 | 0 | 0 | 0 | 0 |
| Syndicate Management | UNK | 4644 | 0 | 0 | 0 | 0 |
| White Castle | 0 | 1125 | 0 | 0 | 0 | 0 |
| Council Econ. Opp. | UNK | UNK | 2349 | 0 | 0 | 0 |
| Cty Systems, Inc. | UNK | UNK | 1418 | 180 | 0 | 0 |
| McDonalds | 0 | 1155 | 2484 | 0 | 0 | 0 |
| Ran Security | UNK | UNK | 25536 | 1127 | 4514 | 0 |
| R Cap LLC | UNK | UNK | 1724 | 0 | 0 | 0 |
| Silverman Bros. | 0 | 0 | 55 | 0 | 0 | 0 |
| AJA Rest Grp. | 0 | 0 | 3853 | 0 | 0 | 0 |
| Taco Bell | UNK | UNK | 3976 | 0 | 0 | 0 |
| Cuy. Cty. E Cleve. Lib Br. | 0 | 834 | 0 | 18042 | 14442 | 497 |
| East Cleve. Police Dept. | 0 | 240 | 0 | 115 | 0 | 0 |
| Unemployment Comp. | N/A | 0 | 0 | 4992 | 0 | 0 |
| Nationwide Prot. Srvcs | N/A | 0 | 0 | 0 | 13563 | 10807 |
| OPERS Pension Withdraw | N/A | 0 | 0 | 0 | 1726 | 0 |
| TOTAL | UNK | 9172 | 41395 | 24456 | 34245 | 11304 |

{¶ 19} According to the city, the amount of interim earnings that must be deducted from Crumbley's gross wages and benefits amounts to $120,572. Crumbley, however, argues that he held many of these positions prior to being terminated and thus the income should not be considered interim income.

{¶ 20} In support of his argument, Crumbley cites *Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn.*, 112 Ohio App.3d 366, 678 N.E.2d 976. In that matter, the relator, a teacher in Cuyahoga Falls, performed

certain employment during evening hours and two months of summer vacation. When determining interim income, the relator argued that the income he earned during evening hours and during the months of summer vacation when he was not teaching should not be included in calculating interim income.

{¶ 21} In agreeing with the relator, the court held, "When [relator] testified before the referee, he stated that he had worked many summers and evenings during his tenure as a full time teacher prior to the layoff. He also testified that other teachers did the same and respondent had no prohibition against outside work that did not conflict with teaching responsibilities. Respondent did not controvert this evidence. Because respondent permitted outside work, such work was not incompatible with [relator's] teaching duties. Thus any salary earned during the summers and evenings of the layoff could have been earned by [relator] while he was employed in a full-time capacity by respondent. Consequently, this court will subtract from [relator's] contractual salary only that portion of his actual salary that he earned during the time he would have been employed by respondent. This court therefore holds that the formula for calculating compensatory damages in this case is as follows: [Relator's] salary under the contract minus his actual salary during the layoff except wages earned during summer and evening hours."

{¶ 22} During the hearing, Crumbley testified that to keep his police officer commission, he retained a position with the East Cleveland Police Department as a volunteer police officer. Crumbley testified that he was required to work as a volunteer for 16 hours per month and then he was able to obtain other security jobs at various businesses. Crumbley testified that he worked at these businesses during the evening shifts, which did not interfere with his shift for the city, which went from 6:45 a.m. until 3:15 p.m. Those businesses included Candlewood, McDonalds, Taco Bell, R Cap L.L.C., Ran Associates, Silvermans, CTV Systems, AJA Restaurant, and the Council for Economic Opportunity.

{¶ 23} Crumbley testified that he worked at CTV Systems from 5:00 p.m. to 11:00 p.m. or 4:00 p.m. to midnight, for RAN Associates from midnight to 7:00 a.m., at Taco Bell after 5:00 p.m., and at Silvermans once or twice from 5:00 p.m. until closing. Additionally, Crumbley also testified that he worked at the East Cleveland library in the evenings from 5:00 p.m. to 9:00 p.m. Crumbley also stated that he worked these jobs prior to being terminated from the city and they were all evening shifts that would not interfere with his employment with the city. Crumbley further testified that the city of Cleveland was aware of this off-duty employment and had no objections. In support of his testimony, Crumbley introduced time records from the East Cleveland library that demonstrated he worked shifts prior to being terminated. Crumbley failed to produce any other

documentary evidence that substantiated his claim that he worked any other position prior to being terminated.

{¶ 24} In response, the city elicited testimony from Curtis McLemore, a clerk treasurer at the East Cleveland Public Library. McLemore testified that he received a subpoena requesting that he provide all 1099s issued to Crumbley from 1992 thru 2002. McLemore said he reviewed the files and was only able to find 1099s from 1998, 2000, 2001, and 2002. McLemore further testified that 1099s were only prepared if the income earned exceeded $500.

{¶ 25} The city also called Laura Palinkas, the Assistant Safety Director for Operations. Palinkas testified that the city maintains a policy that applies to all employees in public safety regarding secondary employment. According to Palinkas, employees are required to obtain permission prior to working secondary jobs by submitting a form requesting such work. Palinkas testified that she reviewed all records since 1991 and did not find any forms filled out by Crumbley requesting that he be allowed to perform secondary employment.

{¶ 26} Based upon the evidence presented, we find that Crumbley's earnings at Candlewood, Syndicate Management, White Castle, the Council for Economic Opportunities, CTV Systems, McDonalds, Ran Security, R Cap L.L.C., Silverman Brothers, AJA Restaurant Group, and Taco Bell, Crumbley's unemployment compensation, and his position at Nationwide Protective Services constitute interim earnings and shall be deducted from his total wages.

{¶ 27} We do not find Crumbley's argument that these positions were worked through the East Cleveland police department persuasive. While he was able to work these positions because of his volunteer work with the city of East Cleveland, each business paid Crumbley separately for the work performed as evidenced by the separate 1099s.

{¶ 28} We do, however, find that Crumbley's testimony regarding his secondary employment with the Cuyahoga County East Cleveland library branch and the East Cleveland police department was credible and that he sufficiently established that he held these positions prior to being terminated from the city. Accordingly, the income he received from those sources will not be deducted as interim income. Additionally, based upon the assertions of counsel for the city during the hearing, Crumbley's withdrawal from his deferred compensation will also not be deducted as interim income.

{¶ 29} Arbitrator Levine also ordered that any expenses incurred by Crumbley for obtaining and maintaining any interim employment that he would not have encountered in his primary employment with the city shall be deducted from his interim earnings before the interim earnings are deducted from back pay. In this instance Crumbley testified that he suffered expenses in the amount of

$1,714 working for the Council for Economic Opportunities and $1,000 in expenses working for the East Cleveland library. Since we did not consider Crumbley's East Cleveland library wages interim income, we will not order those expenses deducted. However, the expenses earned working for the Council for Economic Opportunities shall be deducted from Crumbley's interim income. Therefore, the amount of back pay the city is ordered to pay Crumbley is $46,320.96 ($129,282.96 in pay and benefits minus $82,962 in interim earnings less expenses). We also find that Crumbley is entitled to receive statutory interest commencing May 2002 on the back-pay award. *State ex rel. Crockett*, 67 Ohio St.2d at 367, 368, 21 O.O.3d 228, 423 N.E.2d 1099.

{¶ 30} In its findings of fact and conclusions of law, the city asks this court to deny any award to Crumbley based upon laches. Laches is an affirmative defense based upon a failure to assert a right for an unreasonable length of time. *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328. The elements of laches are (1) delay in asserting a right, (2) absence of an excuse for the delay, (3) actual or constructive knowledge of an injury or wrong, and (4) prejudice to the other party. *Kennedy v. Cleveland* (1984), 16 Ohio App.3d 399, 403, 16 OBR 469, 476 N.E.2d 683, citing *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113.

{¶ 31} In the instant case, the arbitrator made his decision on September 25, 2000. The city filed an application to vacate the award pursuant to R.C. 2711.13 on or about December 22, 2000. The court of common pleas denied the city's application on October 3, 2001, and the city appealed. The city then withdrew the appeal and reinstated Crumbley on May 7, 2002. On May 20, 2002, Crumbley's counsel, Ken Powers, sent William Miller from the city of Cleveland a letter in which he determined the amount of back pay owed Crumbley amounted to $92,168.23. The record is silent whether the city responded to Powers's letter or whether it engaged in any meaningful dialogue to settle this matter. The next documented action took place on January 11, 2008, when Crumbley filed the mandamus action.

{¶ 32} Based upon these facts we do not find that the city established the defense of laches. Less than two weeks after he was reinstated, Crumbley pursued the issue of back pay through his attorney. Accordingly, the city was fully aware that there was an outstanding issue as soon as Crumbley was reinstated.

{¶ 33} The city further argues that they were prejudiced because Crumbley did not sign an authorization permitting the city to obtain his federal tax returns until March 5, 2007. As a result, the city was unable to obtain Crumbley's 1040s for 1997 and 1998 since it was purported that the Internal

Revenue Service ("IRS") only maintains tax records for a period of ten years. However, there was no evidence presented that the city attempted to obtain this information prior to March 5, 2007, or that Crumbley refused to provide such authorization.

{¶ 34} To hold Crumbley responsible for an IRS policy, especially when the record is unclear whether the city even attempted to obtain the information prior to March 5, 1997, would be unfair. Furthermore, the city could have requested Crumbley's state or local income tax records for that same period, which would have provided them with the same information. Finally, Crumbley testified that he gave the records to attorney Kevin Powers in attempts to settle this matter and also that he must have lost the records in 2005 when he was forced to move from his home as a result of his bankruptcy. Based upon these facts, we do not find any bad faith on Crumbley's part.

{¶ 35} As noted above, the burden is on respondent to establish with certainty relator's interim earnings. *State ex rel. Martin.* The court also notes that when relator asked for additional time to conduct discovery, the city opposed the motion. To now claim that it was Crumbley's fault that it did not have the information without presenting any evidence that Crumbley refused to provide the information prior to March 5, 2007, or the extent of the city's efforts in obtaining this same information by other means, is disingenuous. Absent such a demonstration, the court will not relieve the city of its burden of proof.

{¶ 36} Last, we deny Crumbley's request for attorney fees. Ohio follows the general rule that a prevailing party cannot recover attorney fees in the absence of express statutory authorization. *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 347 N.E.2d 527. R.C. 2731.11 does not authorize the award of attorney fees as damages. *State ex rel. Chapnick v. E. Cleveland City School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 449, 755 N.E.2d 883; *State ex rel. Murphy v. Indus. Comm.* (1980), 61 Ohio St.2d 312, 15 O.O.3d 386, 401 N.E.2d 923; *State ex rel. Grosser v. Boy* (1976), 46 Ohio St.2d 184, 75 O.O.2d 228, 347 N.E.2d 539. In the absence of that authorization, attorney fees may not be awarded against a municipality. *Banks v. Oakwood* (Oct. 11, 1990), Cuyahoga App. Nos. 57225 and 58020, 1990 WL 151662.

{¶ 37} In conclusion, this court orders the following: (1) a writ of mandamus shall issue to relators, (2) the city is hereby ordered to pay relators $46,320.96 plus statutory interest from May 7, 2002, in accordance with R.C.1343.03, (3) from this sum, and before distribution to relators, the city is to pay the Public Employees Retirement System ("PERS") the employee contribution based upon Crumbley's gross wages of $125,132.96, (4) the city is to return Crumbley to his

level of seniority prior to his termination, (5) the city is additionally to pay to PERS the employer contribution due Crumbley based upon Crumbley's gross wages of $125,132.96, and (6) the city shall additionally pay any interest and penalties accruing from the deficient PERS employer and employee contributions. The court further orders that the back-pay award shall initially be applied to Crumbley's PERS account to satisfy the employee-contribution deficiency. Once satisfied, the remainder of the award shall be distributed to trustee Virgil E. Brown Jr. for use in Crumbley's bankruptcy proceeding.

{¶ 38} Accordingly, we grant the complaint in mandamus in part. Costs to respondent. It is further ordered that the clerk shall serve upon all parties notice of this judgment and date of entry pursuant to Civ.R. 58(B).

Writ granted.

McMONAGLE, P.J., and BLACKMON and JONES, JJ., concur.

