[Cite as *Cuyahoga Cty. Court of Common Pleas, Juvenile Div. v. Laborers' Internatl. Union of N. Am., Local Union No. 860*, 2022-Ohio-2866.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CUYAHOGA COUNTY COURT OF : 
COMMON PLEAS, JUVENILE 
DIVISION, :

      Plaintiff-Appellee, :        No. 110962

      v. :

LABORERS' INTERNATIONAL : 
UNION OF NORTH AMERICA, 
LOCAL UNION NO. 860, :

      Defendant-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 18, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-916342

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew D. Greenwell, Assistant Prosecuting Attorney, *for appellee*.

Mangano Law Offices Co., L.P.A., Joseph J. Guarino, III, Austin Tyler Opalich, *for appellant*.

ANITA LASTER MAYS, P.J.:

## I.  Introduction

{¶ 1}  Defendant-appellant Laborers' International Union of North America, Local Union No. 860 ("Union") appeals the trial court's judgments that (1) granted the motion of plaintiff-appellee Cuyahoga County Court of Common Pleas, Juvenile Division ("Juvenile Court") to modify the arbitration award; (2) denied the Union's application to confirm the arbitration award; and (3) denied the Union's Civ.R. 52 motion for findings of fact and conclusions of law.

{¶ 2}  We affirm the trial court's judgment.

## II.  Background

{¶ 3}  On July 5, 2017, detention officer Derrick Young ("Young") reportedly observed his supervisor and coworker throw urine on a 15-year-old resident in what the Juvenile Court described as an orchestrated attack.  The Juvenile Court initiated an investigation when they were informed that the Cuyahoga County Department of Job and Family Services ("CCDJFS") had launched an abuse investigation and that the victim's mother had complained.  The investigation of Young and others allegedly involved was conducted by the Juvenile Court from July 18, 2017, through December 2017.  Pursuant to the general court employee administrative leave policy, Young and the others were placed on paid leave without loss of benefits during the investigation.

{¶ 4}  The investigation revealed that Young, a statutory mandatory child abuse reporter, failed to report or intervene in the incident.  The investigation also

revealed additional rule violations by Young that included falsifying time records, failing to conduct required visual checks on residents at 15-minute intervals, and sleeping on-the-job for a ten-hour period.

{¶ 5} On December 21, 2017, Young and a representative of the Union attended a predisciplinary hearing. The hearing officer determined that Young violated 16 policies and procedures and recommended termination. Young was terminated effective December 28, 2017.

{¶ 6} The Union appealed the finding and requested a meeting to challenge the termination pursuant to the parties' Collective Bargaining Agreement ("CBA"). At the January 29, 2018 meeting with the Juvenile Court administrator Tess Neff ("Neff"), Young requested a ten-day suspension in lieu of termination. On February 9, 2019, Neff upheld the hearing officer's findings but granted Young's request for a ten-day unpaid suspension. Young returned to work on February 20, 2018. Young had already received full-pay and benefits during the investigation and was paid for lost wages between the end of December and mid-February.

{¶ 7} Although Young's requested resolution was successful, the Union demanded arbitration on February 10, 2018. Young filed an employee grievance form on February 15, 2018, that stated only "I would like to appeal my suspension." Young was suspended for the ten-day period. The grievance did not state that Young desired to grieve any element of the administrative leave period or the payment of potential lost overtime during that period.

{¶ 8} Arbitration ensued pursuant to the CBA. The parties stipulated that the sole issue before the arbitrator was "whether there was just cause for taking disciplinary action against the Grievant." The Union argued that the Juvenile Court lacked just cause for the discipline and the action should be overturned. The Union also argued that Young was effectively penalized or was not made whole because he did not receive payment for overtime that Young "historically worked during his administrative suspension totaling between 30 and 100 hours." Appellant's brief, p. 2, citing (Vol. 6, p. 49-52.)[1]

{¶ 9} After eight days of hearings, in a May 21, 2019 Opinion and Award, the arbitrator determined that the ten-day suspension was reasonable and supported by just cause. In fact, the arbitrator said that the failure to perform confinement checks and falsification of records "[i]n virtually any other setting * * * would warrant termination, much less a relatively short suspension." Arbitration award at p. 32.

{¶ 10} While the disciplinary action was upheld, the arbitrator also determined that the Juvenile Court "improperly denied overtime compensation in computing the Grievant's pay during the period of his administrative leave, and the backpay period from December 28, 2017, to February 20, 2018 (minus the 10 days of his suspension)." Arbitration award, p. 41. "Court is directed to pay the Grievant 16 hours at time and one-half of his base hourly rate for each and every 80-hour pay

---

[1] The transcript for the arbitration hearing is designated by volume and page numbers.

period between July 18, 2017 and February 20, 2018 (minus 10 days)." Arbitration award, p. 41.

{¶ 11} On June 4, 2019, the Juvenile Court filed a motion to vacate and/or modify the arbitration award under R.C. 2711.10(D) and 2711.11(B) respectively, pursuant to R.C. 2711.13, in the Cuyahoga County Court of Common Pleas. The Juvenile Court argued that the arbitrator's decision on the non-grieved overtime issue exceeded the scope of the arbitrator's authority and ruled upon an issue not submitted for arbitration. On October 25, 2019, the Union responded and moved for confirmation of the arbitration award pursuant to R.C. 2711.09.

{¶ 12} Briefing was completed in the fall of 2019, but the matter remained pending due to scheduling limitations because of the Covid pandemic. On September 30, 2021, two days after a scheduled status conference was canceled, the trial court issued an entry that rescheduled the conference to November 3, 2021. "That same day, just eighty-nine (89) minutes later," the trial court "purported to read the 233 pages of briefings and entered judgment" against Young. Appellant's brief, p. 4.

{¶ 13} The trial court granted the Juvenile Court's R.C. 2711.11(B) motion to modify the award on the ground that the arbitrator awarded upon a matter not submitted:

> Pursuant to R.C. 2711.11, this court has reviewed the briefs submitted and hereby modifies the arbitration award.
>
> This court finds that the arbitrator "awarded upon a matter not submitted to [him]" when calculating and awarding Derrick Young

overtime while on paid administrative leave during the investigation of the allegations against him.

The arbitrator's authority did not extend to the resolution of whether the court properly excluded overtime compensation in computing Derrick Young's pay on administrative leave and his back pay. The arbitrator's sole question for review, and therefore the extent of his authority, was to resolve the issue of whether there was just cause for taking disciplinary action against Derrick Young. Accordingly, because the arbitrator awarded upon a matter not submitted to him, the arbitration award is hereby modified to remove that finding.

Journal entry No. 118847746, p. 1 (Sept. 30, 2021).

{¶ 14} The trial court held:

The modified arbitration award shall state:

1. The grievance is sustained.

2. There was just cause for taking disciplinary action against the grievant, with the 10-day suspension supported by clear and convincing evidence.

3. Pursuant to article 9 of the agreement the fees and expenses of the arbitrator shall be divided equally between the parties.

*Id.* On October 5, 2021, the trial court issued a nunc pro tunc entry that corrected several typographical errors and amended the language from "[t]he grievance is sustained" to "[t]he grievance is denied." Journal entry No. 118906764, p. 1 (Oct. 5, 2021).

{¶ 15} On October 7, 2021, the Union moved for findings of fact and conclusions of law pursuant to Civ.R. 52 "[b]ecause the Court's judgment entry would require a review of the underlying record and not just the briefs." Appellant's brief, p. 4. The trial court issued a summary denial of the motion. The Union appeals.

## III. Assignments of Error

{¶ 16} The Union assigns the following errors:

I. The trial court erred by modifying the arbitrator's award under R.C. 2711.11 because the parties submitted the issue of whether the grievant was unjustly punished with improperly calculated pay during administrative leave to the arbitrator.

II. The trial court erred by failing to confirm the arbitrator's award because the award is not subject to vacation or modification and Local 860 complied with the statutory prerequisites in R.C. 2711.09.

III. The trial court erred in denying defendant's motion for findings of fact and conclusions of law pursuant to Civ.R. 52 because it made at least several factual determinations.

## IV. Award Modification

{¶ 17} The Union argues that the just cause issue included the question of whether Young was unjustly punished with improperly calculated pay during Young's administrative leave. The Juvenile Court counters that the trial court's modification to remove the improper overtime award pursuant to R.C. 2711.11.(B) is authorized by law and supported by the record because the matter was not submitted to the arbitrator.

### A. Standard of Review

{¶ 18} The "voluntary termination of legal disputes by binding arbitration is favored under the law." *Brown v. Nanteeka Gloves, L.L.C.*, 2021-Ohio-1659, 171 N.E.3d 1284, ¶ 14 (8th Dist.), citing *Kelm v. Kelm*, 68 Ohio St.3d 26, 27, 623 N.E.2d 39 (1993). "[A]n arbitrator's award is presumed to be valid." *N. Olmsted v. Internatl. Assn., Local 1267*, 8th Dist. Cuyahoga No. 91300, 2009-Ohio-960, ¶ 11,

citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 551 N.E.2d 186 (1990).

**{¶ 19}** An arbitrator also "'has broad authority to fashion a remedy when a CBA violation has occurred.'" *Id.* at ¶ 45, quoting *Bd. of Trustees v. FOP, Ohio Labor Council*, 81 Ohio St.3d 269, 273, 690 N.E.2d 1262 (1998). Notwithstanding this fact, that authority is limited by an express provision to the contrary in the CBA. *Bd. of Trustees* at *id.*

**{¶ 20}** "[T]he arbitration procedure set forth in R.C. Chapter 2711 authorizes a limited and narrow judicial review of an arbitration award." *Brown* at ¶ 14, citing *Asset Acceptance L.L.C. v. Stancik*, 8th Dist. Cuyahoga No. 84491, 2004-Ohio-6912. "Thus, a trial court may not evaluate the merits of an award. *Id.* at ¶ 32, citing *Brookdale Senior Living v. Johnson-Wylie,* 8th Dist. Cuyahoga No. 95129, 2011-Ohio-1243, at ¶ 6. "Instead, the review determines whether the appealing party has established that the award is defective within the confines of R.C. Chapter 2711." *Id.*, citing *id.*

**{¶ 21}** "It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award." *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 406-407, 588 N.E.2d 802 (1992).

**{¶ 22}** An arbitration departs from the essence of the agreement and exceeds the arbitrator's authority when it "'"conflicts with the express terms of the collective bargaining agreement'" or "'is without rational support or cannot be rationally

derived from the terms of the agreement.'"" *Brook Park v. FOP*, 8th Dist. Cuyahoga No. 108879, 2020-Ohio-3035, ¶ 13, quoting *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 7, quoting *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFLCIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus.

{¶ 23} While an arbitrator receives great deference, "his powers are not unlimited in the resolution of labor disputes." *Id.* at 180. "'The arbitrator is confined to the interpretation and application of the collective bargaining agreement" and while "he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions.'" *Id.*, quoting *Detroit Coil Co. v. Internatl. Assn. of Machinists & Aerospace Workers,* 594 F.2d 575 (6th Cir.1979). It is the duty of the appellate court "to determine whether the arbitrator's award was reached in a rational manner from the collective bargaining agreement." *Id.*

{¶ 24} It is also the duty of an appellate court to accept findings of fact that are not clearly erroneous but decide questions of law de novo when reviewing a decision of a common pleas court "confirming, modifying, vacating, or correcting an arbitration award." *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, syllabus.

{¶ 25} "'Whether an arbitrator has exceeded his authority is a question of law.'" *Id.* at ¶ 25, quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th

Cir.2000). In the instant case, the issue of whether the arbitrator has ruled upon matters not submitted is also question of law. *See CNH Indus. N.V. v. Reese*, ___U.S.___, 138 S.Ct. 761, 763, 200 L.Ed.2d 1 (2018). "This Court has long held that collective-bargaining agreements must be interpreted 'according to ordinary principles of contract law.'" *Id.*, quoting *M&G Polymers USA, LLC v. Tackett*, ___U.S.___, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015).[2]

{¶ 26} This court's de novo review is not of the merits of the dispute as presented to the arbitrator but is limited to whether the R.C. Chapter 2711 statutory grounds exist to support the trial court's judgment. *Zeck v. Smith Custom Homes & Design, LLC*, 8th Dist. Cuyahoga No. 110574, 2022-Ohio-622, ¶ 12, citing *Adams Cty./Ohio Valley Local School v. OAPSE/AFSCME, Local 572*, 2017-Ohio-6929, 94 N.E.3d 937, ¶ 18 (4th Dist.), citing *Jackson Cty., Ohio Sheriff v. FOP Ohio Labor Council, Inc.*, 4th Dist. Jackson No. 02CA15, 2004-Ohio-3535, ¶ 19-20.

**B. Discussion**

{¶ 27} R.C. 2711.11(B) provides in part:

[T]he court of common pleas in the county wherein an award was made in an arbitration proceeding shall make an order modifying or correcting the award upon the application of any party to the arbitration if: * * *

---

[2] The cases cited in appellant's opening brief and that of appellee related to the standard of review regarding motions to stay or compel arbitration under R.C. 2711.02 and 2711.03 and not motions to amend for a matter not submitted under R.C. 2711.11(b). In appellant's reply brief, it claimed that appellee misstated the proffered standard of review and argued that the arbitrator's determination is factual. We are guided by the *Portage* case and proceed accordingly.

(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

{¶ 28} The Union argues that the record supports that the issue of overtime pay was properly before the arbitrator. During the arbitration, Neff was questioned by the Union about funds budgeted for detention officers' overtime. Neff explained that overtime was approved as needed and "is never guaranteed." *Id.* (Vol. 4, p. 152.) Neff was aware that Young's administrative leave pay did not include overtime and explained that any decision regarding Young's administrative leave payment "would have come through our HR department because you only got overtime if you worked it." (Vol. 4, p. 153.)

{¶ 29} The Union advises that the Juvenile Court did not object to the questions at that time and that the Union "eliminated any question concerning its intention to fight for overtime hours to be included in back pay, regardless of the just cause determination, during its opening statement." Appellant's brief, p. 9. However, the Union concedes that this information was not shared until "late in the eight-day hearing because, as is standard practice, the Union reserved its opening statement for the beginning of the Union's case in-chief." *Id.* (Vol. 5, p. 79-91.) At that point, the Union announced that Young was not made whole for the six-month administrative leave period "regardless of the outcome of the Arbitrator's determination as to the ten-day suspension." *Id.*, citing *id.*

{¶ 30} The Juvenile Court maintains that the overtime issue was not addressed because the sole issue before the arbitrator was the existence of just cause

for the suspension.   The parties placed two stipulations on the record at the inception of the arbitration proceeding.   First, that the matter was properly in arbitration.  Secondly, the parties expressly agreed to the issue before the arbitrator.

> Arbitrator:   Regarding the issue in this arbitration:  The issue will be whether there was just cause for taking disciplinary action against the grievant.  Will the Court so stipulate?
>
> Court:       Yes.
>
> Arbitrator:   And the union?
>
> Union:       Yes.

(Vol. 1, p. 3-4.)

{¶ 31}    A review of the record demonstrates that the Juvenile Court posed its objection when the Union pressed the overtime issue during the case-in-chief:

> Court:  I'm going to object to this. We are here on whether or not he violated the rules and deserved to be on leave and then terminated and then suspended.
>
> We are not here about what the effects are on him. It's presumed that having reduced income would have a bad affect, but we are here to determine whether he brought it on himself or not.
>
> Union:  Well we are here on a couple of issues and this one is relevant to whether or not he is owed additional monies as a result of being placed on administrative leave.
>
> Court:  That's a separate issue. That should be bifurcated.
>
> Union:  We're not bifurcating.

(Vol. 6, p. 52-53.)

{¶ 32} The discussion continued:

Arbitrator:  The grievance is seeking compensation for the losses incurred by Mr. Young during the period of — whether it says that in the actual grievance statement or not, it is presumed that the union is seeking a remedy in addition to a finding of no just cause.

It is correct that the alleged sympathy aspect that is being testified to is not really germane, but what is germane is the economic losses that were suffered and I hope you will trust that I can separate one from the other.

So I am going to overrule the objection. I believe the testimony on this is pretty much complete, is that correct?

Union:  Other than the overtime.

Court:  I do agree with you and I understand where you are going, but the grievance has two words, appealing termination [sic]. Nothing else.  We were not put on notice of any of this.  And now they've gone off the grievance and gone onto something [else].

Arbitrator:  I have only — I am trying to think how many cases I have had here before, but I am assuming there have been other arbitration awards involving the Court in which there has been a finding of no just cause and that it was necessary to compute back pay.

So whether that's done after the award or whether there is evidence of an economic loss during the arbitration proceedings, I do not think it is inappropriate to address it.

But as I just said to [Union counsel], I think we have had sufficient [discussion] on that point at this juncture. So I suggest you move on to another topic, if there is another topic.

(Vol. 6, p. 54-55.)

{¶ 33} The Union next advised the arbitrator that the Juvenile Court misrepresented that it was never formally told that overtime was an issue. The Juvenile Court disagreed:

> Court:  Never [addressed] before. It was in settlement talks and those are not admissible and it should not be on the record and I would move to strike them.
>
> Union:  I think that it can be there because you said you never got notice. Not that you weren't told about it in an official way.

(Vol. 6, p. 55-56.)

{¶ 34} The arbitrator interjected,

> [e]xcuse me. *There was never any formal notice* and if there is a finding *of no just cause*, I'm going to leave it to the parties to work out whatever financial remedy is appropriate because as I said * * * I think it's time to move on to another subject and it's not helpful to be having this kind of acrimony between counsel.

(Emphasis added.)  (Vol. 6, p. 56.)  The Juvenile Court urges that in addition to the express stipulations on the record, the briefs in the arbitration would have been substantially different if the overtime issue was a subject of arbitration.

{¶ 35} The just cause determination is not in dispute. We reiterate that this court's narrow focus is on the trial court's decision that the award was made on a matter not submitted. "An arbitrator's powers are set by the agreement from which he draws his authority. The arbitrator has no authority to decide issues which, under the agreement, the parties did not submit to review." *State Farm Mut. Ins. Co. v. Blevins*, 49 Ohio St.3d 165, 551 N.E.2d 955 (1990), at paragraph one of the syllabus. Conversely, "'if the arbitrator has not exceeded his or her powers, the award should not be vacated or modified, absent any of the other circumstances in R.C. 2711.10

and 2711.11.'" *Bd. of Trustees*, 81 Ohio St.3d at 273, 690 N.E.2d 1262, quoting *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc.*, 63 Ohio St.3d at 407, 588 N.E.2d 802.

{¶ 36} The arbitrator listed in the Award section entitled "relevant provisions of the agreement, statute, policies and post orders": CBA Article 8, Section 3 that governs progressive discipline, R.C. 2151.421 that governs reporting child abuse or neglect, and excerpts of the Juvenile Court's policy and procedure manual that Young was disciplined for violating. Arbitration award, p. 18.

{¶ 37} The Union argues that the award is appropriate because the arbitrator's power to award a remedy is presumed unless the parties agree otherwise and that an arbitrator has inherent authority to formulate a remedy when determining just cause unless the CBA expressly provides otherwise. *Queen City Lodge* at 406.

{¶ 38} The Juvenile Court counters that the CBA expressly provides otherwise in this case. According to Article 9, Section 3(B) of the CBA, "[t]he arbitrator's authority shall be limited to interpretation and application of the Agreement." The arbitrator "shall have no authority to (1) add to or subtract from, or modify in any manner, the provisions of this Agreement, (2) pass upon issues governed by law, or (3) make an award in conflict with law." *Id.*

{¶ 39} The term "grievance" is defined as "a dispute between the Court and Union, or between the Court and an employee, as to the interpretation or application of, or compliance with, an express provision of this Agreement." Article 9, Section

1. An employee is required to "reduce the grievance to writing on a grievance form, sign it, and present it to the Superintendent or designee." If the matter has not been resolved by the second step of the process, the Union must provide written notice to arbitrate.

{¶ 40} Article 5 provides that "except as expressly limited" by the CBA "Court shall have the right to take any action it considers necessary and proper to effectuate any management policy, expressed or implied, except as expressly limited under this Agreement." Article 5, Section 1. Management has the unilateral right "to determine overtime, the scheduling and/or assignment of overtime and the amount of mandated overtime," "to determine the Court's budget and uses thereof," and "to do all things appropriate and incidental to any of its rights, powers prerogatives, responsibilities, and authority." Article 5, Section 2.

{¶ 41} Overtime is at the Juvenile Court's sole discretion. "The Court shall determine the need for overtime, whether scheduled or unscheduled." Article 11, Section 1. Overtime is paid "for each overtime hour worked" and defines for purposes of overtime computation, "compensatory time, exchange time, vacation, military time, and holidays shall be counted as hours worked." Article 11, Section 1(B).

{¶ 42} Article 8, Section 1, of the CBA specifies that

whenever it becomes necessary to discipline its employees, the Court shall retain all of those rights which are traditionally reserved thereto, subject only to those other procedures, limitations, and options which are set forth in this Article and Article 9.

*Id.*

{¶ 43} During the predisciplinary process, Young's request that his termination be replaced by a ten-day suspension was granted. It was after that event that Young submitted a written grievance that stated, "I would like to appeal my suspension." The suspension was for a ten-day period. The grievance did not address overtime pay that Young could have earned at the court if he had not been placed on administrative leave. The Juvenile Court and the Union stipulated, and the arbitrator stated on the record, that the only issue before the arbitrator was whether just cause existed for the disciplinary action, i.e., the ten-day suspension.

{¶ 44} On the facts underlying the discipline, the arbitrator found "clear and convincing evidence" that Young committed the charged acts, the evidence of multiple infractions was overwhelming, and that "any one of the infractions" was sufficient to support "just cause for termination." Arbitration award, p. 38, 41. However, the arbitrator determined that the administrative leave policy "is in reality a suspension" albeit with full pay and benefits. Arbitration award, p. 39.[3] "The question is whether limiting Y[oung's] pay to straight time hours effectively penalized him contrary to the principle recognized by Neff, that employees should not be detrimented [sic] while on administrative leave." *Id.*

{¶ 45} The Juvenile Court explains that administrative leave is governed by the Juvenile Court's Policies and Procedures Manual ("Policies"). The Policies are

---

[3] The administrative leave policy applies to all court employees.

applicable to all court employees including bargaining unit employees except that "where the policies conflict with any Article in" the CBA, the CBA" shall supersede." Article 23, Section 1.

{¶ 46} Policy 7.05 entitled "Administrative Leave Pending Investigation" provides for paid and unpaid administrative leave without a predisciplinary conference pending an investigation and specifies that "[a]n Administrative Leave *is not an episode of discipline.*" (Emphasis added.) An employee may be placed on administrative leave for various reasons including

> When the employee's performance of required job duties could interfere with an investigation; impair the orderly and efficient administration of justice or the operation of the department; and/or impair the morale and/or delivery of services. An employee shall also be placed on Administrative Leave if determined necessary for the safety and/or security of clients and/or employees.

Policy 4.13. Summarized, these sections provide in part, that (1) administrative leave is not a disciplinary action, (2) administrative leave is appropriate where the safety and security of clients are concerned; and (3) the CBA provisions on discipline superseded any conflicts with the Policies.

{¶ 47} As to the finding that the failure to pay potential overtime penalized or "detrimented" Young, the CBA provides that "[n]o bargaining unit member shall be terminated, *reduced in pay,* suspended, or reprimanded *except for just cause.*" (Emphasis added.) Article 8, Section 1. Thus, though the overtime issue was not submitted, the plain language supports that the Juvenile Court had the authority to effectively reduce Young's pay.

{¶ 48} The Juvenile Court also states that the arbitrator's overtime decision drew on inapplicable cases involving "make whole" awards in wrongful termination discipline cases and cites *In State ex rel. Crumbley v. Cleveland*, 185 Ohio App.3d 82, 2009-Ohio-6100, 923 N.E.2d 200, ¶ 12 (8th Dist.). The arbitrator held that correction officer Crumbley was wrongly terminated. Crumbley requested re-employment, "longevity pay; uniform allowance pay; uniform maintenance pay; holiday pay; sick time; and dormitory unit premium pay." *Id.* at ¶ 11.

{¶ 49} In finding that Crumbley was, in fact, entitled to his request, this court explained, "[t]he purpose of a back-pay award is to make the *wrongfully terminated employee whole* and to place the employee in the same position he would have been absent such termination." (Emphasis added.) *Id.* at ¶ 12, citing *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Ed.,* 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298. The decision was based on the collective bargaining agreement that established Crumbley's entitlement "with certainty based upon the parties' agreement." *Id.*

{¶ 50} In this case, Young was not wrongly suspended. It is clear from the record that the parties did not mutually agree to submit the question of whether, with a finding of just cause for his discipline, Young was entitled to be paid at a premium. The Juvenile Court expressly objected. The arbitrator stated that he "assum[ed] there have been other arbitration awards involving the Juvenile Court in which there has been a finding of no just cause and that it was necessary to compute back pay." (Vol. 6, p. 54.) The arbitrator also acknowledged that "[t]here

was never any formal notice and if there is a finding of *no just cause,* I am going to leave it to the parties to work out whatever financial remedy is appropriate." (Emphasis added.) (Vol. 6, p. 55.) As stated previously, there was a finding of just cause and therefore no additional determinations were warranted.

{¶ 51} As the Juvenile Court urges, "R.C. Chapter 2711, as well as pertinent case law, confines the parameters of what the arbitrator may consider to those issues actually submitted by the parties." *Huber Hts. v. Fraternal Order of Police*, 73 Ohio App.3d 68, 78, 596 N.E.2d 571 (2d Dist.1991). "The statute does not permit an arbitrator to decide all issues which he considers to be before him even if he notifies the parties that he intends to consider such matters." *Id.* at 78-79.

{¶ 52} "If an arbitrator were allowed to rule on issues on this basis an unjust result could be reached. Parties to a collective bargaining agreement bargain for the specific manner of dispute resolution." *Id.* at 79. "As part of the bargain, the parties decide which issues they will submit to arbitration. If the arbitrator were allowed to adopt a notice approach to jurisdiction, the parties would have no control over what matters the arbitrator could decide and their bargain would thus be frustrated." *Id.*

{¶ 53} While an arbitrator is sometimes required to determine proof of the misconduct and the reasonableness of the disciplinary action, that authority is limited where there is language in the CBA that prohibits the exercise of that power. *Bd. of Trustees*, 81 Ohio St.3d 272, 690 N.E.2d 1262, citing Schoonhoven, Fairweather's *Practice and Procedure in Labor Arbitration* (3 Ed.1991).

{¶ 54} It is also true that an arbitrator is "without authority to disregard or modify plain and unambiguous language." *Hamilton v. Internatl. Union of Operating Engineers, Local 20*, 2016-Ohio-5565, 69 N.E.3d 1253, ¶ 22 (12th Dist.), citing *Chardon Local School Dist. Bd. of Edn. v. Chardon Edn. Assn.*, 2013-Ohio-4547, 3 N.E.3d 1224, ¶ 22 (11th Dist.).

{¶ 55} In this case, the powers of the arbitrator are expressly limited by the CBA and the payment of overtime is governed by the CBA. The arbitrator's award of overtime and finding that the administrative leave is a suspension is actually covered by the CBA disciplinary process and conflicts with the terms. An arbitrator's powers are set by the agreement from which he draws his authority, and "[t]he arbitrator has no authority to decide issues which, under the agreement, the parties did not submit to review." *Blevins*, 49 Ohio St.3d 165, 551 N.E.2d 955, at paragraph one of the syllabus.

{¶ 56} In this case, the CBA limits the scope of the arbitrator's authority, the award "'conflicts with the express terms of the agreement,'" and therefore it "'is without rational support and/or cannot be rationally derived from the terms of the agreement.'" *Cedar Fair, L.P.*, 140 Ohio St.3d, 447, 2014-Ohio-3943, 19 N.E.3d 893, at ¶ 7, quoting *Ohio Civ. Serv. Emp. Assn. v. Ohio Civ. Serv. Emp. Assn., Local 11*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991).

{¶ 57} Based on our de novo review, the trial court did not err as a matter of law. The first assigned error lacks merit.

## V. Failure to Confirm Award R.C. 2711.09

{¶ 58} "'The purpose of [R.C. 2711.09] is to enable parties to an arbitration to obtain satisfaction of the award.'" *Cleveland v. Laborers Internatl. Union Local 1099*, 2018-Ohio-161, 104 N.E.3d 890, ¶ 14 (8th Dist.), quoting *Warren Edn. Assn. v. Warren City Bd. of Edn.*, 18 Ohio St.3d 170, 172, 480 N.E.2d 456 (1985). "Therefore, when a timely motion is made under R.C. 2711.09 to confirm an arbitration award, the court must grant the motion, "*unless a timely motion for modification or vacation has been made and cause to modify or vacate is shown.*'" (Emphasis added). *Id.*, quoting *id.* at 174.

{¶ 59} This court's finding that the trial court's judgment that granted modification and affirmed the just cause determination was not in error resolves the issue of confirmation.

{¶ 60} The trial court's judgment was not in error and the argument is overruled.

## VI. Civ.R. 52 Findings of Fact and Conclusions of Law

{¶ 61} The Union argues here that the trial court's failure to issue findings of fact and conclusions of law pursuant to Civ.R. 52 constitutes error. We disagree.

> Proceedings involving the confirmation or vacation of an arbitration award are special statutory proceedings. Civil Rule 1(C)(7) provides the civil rules are by definition not to apply to procedural matters in special statutory proceedings "to the extent that they would by their nature be clearly inapplicable."

> Pursuant to R.C. 2711.09, when a motion is made to confirm an arbitration award * * * [t]he applicable civil rule provisions are those pertaining to motions."

*Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 2013-Ohio-3211, 996 N.E.2d 1025, ¶ 19 (10th Dist.), quoting *MBNA Am. Bank, N.A. v. Anthony*, 5th Dist. Tuscarawas No. 05AP09-0059, 2006-Ohio-2032.

{¶ 62} Civ.R. 52 provides, in pertinent part:

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, * * *, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

> Findings of fact and conclusions of law required by this rule and by Civ.R. 41(B)(2) and Civ.R. 23(G)(3) are unnecessary upon all other motions including those pursuant to Civ.R. 12, Civ.R. 55 and Civ.R. 56.

{¶ 63} This court has upheld a trial court's refusal to issue findings of fact and conclusions of law in a motion to vacate an arbitration award on the ground that

> Findings of fact and conclusions of law under Civ.R. 52 are necessarily beyond the very limited scope of the court's review of an arbitration award — if the court cannot review any legal or factual conclusions made by the arbitrator, it would have no duty to issue findings of fact and conclusions of law. And even had there been some requirement to issue findings of fact and conclusions of law, the very detailed decision submitted by the arbitrator would have more than fulfilled any obligation under Civ.R. 52.

*Cleveland v. IBEW Local 38*, 8th Dist. Cuyahoga No. 92982, 2009-Ohio-6223, ¶ 34.

{¶ 64} The third assignment of error is overruled.

{¶ 65} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

EMANUELLA D. GROVES, J., CONCURS;
CORNELIUS J. O'SULLIVAN, JR., J., DISSENTS (WITH SEPARATE OPINION)


CORNELIUS J. O'SULLIVAN, JR., J., DISSENTING:

{¶ 66} Respectfully, I dissent. This case is about two parties who have contracted with each other to be bound by arbitration. Although the underlying facts of the case are disturbing, contract law controls the outcome here.

{¶ 67} It is well-established that "[a]fter finding a violation of a collective bargaining agreement, an arbitrator is presumed to possess implicit remedial power, unless the agreement contains restrictive language withdrawing a particular remedy from the jurisdiction of the arbitrator." *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 588 N.E.2d 802 (1992), syllabus; *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, ¶ 40 (8th Dist.). No such restrictive language appears herein.

{¶ 68} "An arbitrator derives his [or her] authority from the express terms of the collective-bargaining agreement between the parties." *Fostoria v. Ohio Patrolmen's Benevolent Assn.*, 106 Ohio St.3d 194, 2005-Ohio-4558, 833 N.E.2d 720, ¶ 11. "Arbitrators act within their authority to craft an award so long as the

award 'draws its essence' from the contract — that is, 'when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful.'" *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 7, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus. "[A]n award 'departs from the essence of a [contract] when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement.'" *Cedar Fair, L.P.* at *id.*, quoting *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus.

{¶ 69} Under the CBA here the parties set forth their rights and responsibilities regarding numerous issues including, discipline (Article 9); grievance procedure and arbitration (Article 10); overtime (Article 11); and alternative dispute resolution (Article 37). Thus, the arbitrator's decision in this case was contained within the four corners of the CBA.

{¶ 70} Moreover, Article 9, Section 3(B) provides that

The decision of the Arbitrator shall be final and binding upon the Court, the Union and the employee(s) * * *. The arbitrator's authority shall be limited to interpretation and application of the Agreement, and he [or she] shall have no authority to (1) add to or subtract from, or modify in any manner, the provisions of this Agreement, (2) pass upon issues governed by law, or (3) make an award in conflict with law.

{¶ 71} I believe the arbitrator's decision here was proper under Article 9, Section 3(B) of the parties' CBA.

{¶ 72} I disagree with the majority's finding that, in awarding Young overtime, the arbitrator decided a nonsubmitted issue.

> The parties to a collective bargaining agreement can not anticipate every possible breach of the agreement that may occur during its life and then write an appropriate remedy for each such situation into the agreement. This fact does not, however, preclude an arbitrator from awarding a remedy. Even though the agreement may not spell out an applicable remedy for a matter that is before an arbitrator, the parties usually expect that the arbitrator, if he or she finds a violation occurred, will proceed to award a remedy of some type.

(Citation omitted.) *Queen City Lodge No. 69, FOP, Hamilton Cty., Ohio, Inc.*, 63 Ohio St.3d at 405, 588 N.E.2d 802.

{¶ 73} I further note that in regard to the appellee's objection at the arbitration hearing to the arbitrator considering overtime for Young, the objection was not that the issue was outside of the arbitrator's scope of authority. Rather, the objection was that counsel was eliciting testimony about Young's lost income in an attempt to garner "sympathy" from the arbitrator. The arbitrator overruled the objection, stating,

> The grievance is seeking compensation for the losses incurred by Mr. Young during the period of — whether it says that in the actual grievance statement or not, it's presumed that the union is seeking a remedy in addition to a finding of no just cause.

> It's correct that the alleged sympathy aspect that's being testified to [by Young] isn't really germane, but what is germane is the economic losses that were suffered and I hope you'll trust that I separate one from the other.

Oct. 4, 2018 Arb. Tr. p. 54.

{¶ 74} Appellee's counsel also informed the court that they were not put on notice that overtime pay would be part of the arbitration process, to which appellant responded that the issue of Young's overtime pay had been discussed in the parties' settlement negotiations and, therefore, the issue was not "new." The arbitrator stated his belief that consideration of economic damages is inherent in a "just cause" arbitration proceeding. I agree.[4]

{¶ 75} "'Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration.'" *Stoner v. Salon Lofts, LLC*, 10th Dist. Franklin No. 13AP-437, 2014-Ohio-796, ¶ 13, quoting *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15, citing R.C. Chapter 2711, *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27, and *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). "'Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.'" *Stoner* at *id.*, quoting *Kelm v. Kelm*, 68 Ohio St.3d 26, 29, 623 N.E.2d 39 (1993), quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712, 590 N.E.2d 1242 (1992). "'Arbitration also has the additional benefit of unburdening crowded court dockets.'" *Stoner* at *id.*, quoting *Hayes* at ¶ 15, citing *Mahoning Cty. Bd. of Mental Retardation & Dev.*

---

[4] The arbitrator also stated that "if there is a finding of *no* just cause, I'm going to leave it to the parties to work out whatever financial remedy is appropriate." (Emphasis added.) Oct. 4, 2018 Arb. Tr. p.56. The arbitrator found just cause for the appellee's ten-day suspension of Young and then went on to consider his economic damages while he was on administrative leave and the period of time between his termination and reinstatement (less ten days for the suspension).

*Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83, 488 N.E.2d 872 (1986). "'In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor.'" *Stoner* at *id.*, quoting *Hayes* at ¶ 15, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.

{¶ 76} I believe the arbitrator's decision to award Young overtime was derived from the four corners of the parties' CBA and, therefore, given the strong presumption favoring arbitration, and the great latitude afforded an arbitrator in issuing a decision, I would reverse the trial court's judgment modifying the arbitrator's award and remand the case for reinstatement of the arbitrator's award.

{¶ 77} For the reasons stated above, I respectfully dissent.